UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

                                                    Case No. 14-41173
SHELDON M. KORN,
                                                    Chapter 7
                    Debtor.
_____/                   Judge Thomas J. Tucker

LAWRENCE C. LENCHNER, et al.,

                    Plaintiffs,

vs.                                                 Adv. Pro. No. 14-4408

SHELDON M. KORN,

                    Defendant.
_____/

**OPINION REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This adversary proceeding is before the Court on Plaintiffs' motion for summary

judgment (Docket # 27, the "Motion"),[1] seeking summary judgment on Counts IV through VIII

of Plaintiffs' complaint.[2]  These counts seek a determination that a debt of over $1.9 million to

Plaintiffs, arising out of a state court judgment, is nondischargeable in Defendant's bankruptcy

case under 11 U.S.C. §§ 523(a)(2)(A) (Counts IV (false pretenses), V (false representation), and

VI (actual fraud)); 523(a)(4) (Count VII); and 523(a)(6) (Count VIII).   Plaintiffs argue that they

are entitled to judgment on these counts based on the doctrine of collateral estoppel.

---

[1]  The Motion amended and superceded the Plaintiffs' motion for summary judgment filed at
Docket # 26.

[2]  Plaintiffs' complaint (Docket # 1) contained eight counts.  Counts I-III of the complaint
objected to Defendant's discharge under various provisions of Bankruptcy Code § 727(a).  Those counts
were dismissed, by stipulation of the parties.  (*See* Docket # 46.)

The Court concludes that Plaintiffs are not entitled to summary judgment in any respect, on any count of their complaint. Plaintiffs' Motion will be denied in its entirety.

## I. Facts

Plaintiff Lawrence Lenchner ("Lenchner") is the brother-in-law of Defendant Sheldon Korn ("Sheldon"). Prepetition, Lenchner was involved in the development and sale of real estate with some limited liability companies Lenchner had formed (the "Lenchner Entities"). Lenchner and the Lenchner Entities had a business relationship with Sheldon; Sheldon's wife, Gale Korn; and Sheldon's two daughters, Shauna Korn and Ashley Korn (collectively, the "Korns"); and the Korn Family Limited Partnership ("KFLP").[3] The business relationship ended on a sour note in December 2002, when Lenchner ceased his association with the Korns.

### A. The state court litigation

### 1. The complaint and counterclaim

The Korns and KFLP responded to the collapse of the business relationship by filing a complaint against Lenchner and the Lenchner Entities in the Circuit Court for the County of Charlevoix, Michigan, on January 15, 2003 (Case No. 03-1723-19-CB, the "State Court Lawsuit").[4] The state court proceedings were extensive and lengthy, and the collateral estoppel issues discussed in this opinion require the Court to describe the state court proceedings in detail.

The complaint by the Kerns and KFLP in the State Court Lawsuit included the following

---

[3] KFLP is "a Michigan limited partnership of which . . . Sheldon Korn is the general partner and of which [Gale Korn, Shauna Korn, and Ashley Korn] are the limited partners." (*See* Ex. A to Mot. (Docket # 27) ("Third Amended Complaint" in state court litigation between the parties) at 2 ¶ 1.)

[4] A copy of the "Third Amended Complaint," which was the operative complaint in the State Court Lawsuit when judgment was entered by the state court, is attached to the Motion (Docket # 27) at Exhibit A.

counts:

- Count I — "Money Owing For Advances"
- Count III [sic] — "Conversion"
- Count IV — "Liability Under [Mich. Comp. Laws §] 600.2919a"
- Count V — "Misrepresentation (Fraudulent Or Innocent)"
- Count VI — "Silent Fraud"
- Count VII — "Bad Faith Promises"
- Count VIII — "Breach Of Fiduciary Duty"
- Count IX — "Tortious Interference"
- Count X — "Discharge/Termination In Violation of Public Policy, Or Alternatively, Violation of The Whistle-Blowers' Protection Act"
- Count XI — "Civil Conspiracy"
- Count XII — "Breach of Contract"
- Count XIII — "Promissory Estoppel"
- Count XIV — (not titled but alleging in relevant part, that "[a]s an alternative and/or in addition to Plaintiffs' right to recover under the foregoing Counts, Plaintiffs Sheldon and Gale Korn may be equitably entitled to own 50% of Business or of each Defendant, except for Defendant Lenchner."[5]

Lenchner and the Lenchner Entities responded to the state court complaint against them,

in part, by filing counterclaims against the Korns and KFLP, alleging:

- Count I — "Conversion"
- Count II — "Civil Conspiracy to Commit Conversion"
- Count III — "Breach of Fiduciary Duty"
- Count IV — "Civil Conspiracy to Commit Breach of Fiduciary Duty"
- Count V — "Fraud"
- Count VI — "Silent Fraud"
- Count VII — "Innocent Misrepresentation"
- Count VIII — "Conspiracy to Commit Fraud, Silent Fraud and Innocent Misrepresentation"
- Count IX — "Promissory Estoppel"
- Count X — "Unjust Enrichment"
- Count XI — "Constructive Trust."[6]

The basic facts alleged by Lenchner and the Lenchner Entities in support of their

---

[5]  *See* Third Am. Compl.  (Ex. A to Mot. (Docket # 27)).

[6]  *See* Ex. B to Mot. (Docket # 27) ("Counterclaim" in State Court Lawsuit) at pdf. pp. 79-88.

3

counterclaims were that the Korns, individually and through KFLP, engaged in a common scheme to defraud Lenchner and the Lenchner Entities, under which the Korns and KFLP (1) misrepresented to Lenchner and the Lenchner Entities that they were spending money Sheldon withdrew from the bank accounts of the Lenchner Entities for business purposes only, when in fact they were draining such accounts for personal use; and (2) failed to disclose to Lenchner and the Lenchner Entities that they intended to loot, and were looting, the Lenchner Entities.[7] Lenchner and the Lenchner Entities alleged further that they "reasonably relied upon the misrepresentations and fraudulent omissions made to them by Sheldon Korn" due to the family relationship between Lenchner and the Korns, and that Lenchner and the Lenchner Entities suffered damages as a result of the fraudulent scheme.[8] Lenchner and the Lenchner Entities alleged that under their fraudulent scheme, the Korns and KFLP "drain[ed] over $700,000 from [the bank] accounts [of some of the Lenchner Entities] for personal use."[9]

**2.  The trial of the State Court Lawsuit**

The state court conducted a 13-day jury trial in the State Court Lawsuit.  Before jury deliberation began, both the Korns and KFLP on the one hand, and Lenchner and the Lenchner Entities on the other hand, dismissed their civil conspiracy claims against each other.

**a.  The jury instructions**

After all of the evidence and arguments in the State Court Lawsuit were completed, the state court gave, in relevant part, the following instructions to the jury regarding the

---

[7]  *See id.* at pdf. pp. 75-76, 82-84.

[8]  *Id.* at pdf. pp. 75, 83-84.

[9]  *Id.* at pdf. p. 75.

4

counterclaims of Lenchner and the Lenchner Entities.

**I. Fraud and Misrepresentation**

The state court's jury instruction regarding fraud was, in relevant part, the following:

> To establish fraud, plaintiffs and counter-plaintiffs have the burden of proving each of the following elements by clear and convincing evidence:
>
> A. The defendant or counter-defendant made a representation of a material fact.
>
> B. The representation was false when it was made.
>
> C. The defendant or counter-defendant knew the representation was false when it was made or that it was made recklessly, that is, without knowing whether it was true.
>
> D. The defendant or counter-defendant made the representation with the intent that the plaintiff or counter-plaintiff would rely on it.
>
> E. The plaintiff or counter-plaintiff did rely on the representation, and;
>
> F. That the plaintiff or counter-plaintiff was damaged as a result of its reliance.[10]

**ii. Silent fraud**

The jury instruction regarding silent fraud was, in relevant part, as follows:

> Each plaintiff and counter-plaintiff claims that a defendant or counter-defendant defrauded that plaintiff or counter-plaintiff by failing to disclose material facts. To establish this, each plaintiff and counter-plaintiff has the burden of proving each of the following evidence (sic) by clear and convincing evidence:

---

[10] Trial Tr. in State Court Lawsuit (dated May 26, 2006) at 77 ln. 21 through 78 ln. 11. A copy of the state court trial transcript is attached to the Motion (Docket # 27) at Exhibit G and to Sheldon's objection to the Motion (Docket # 37) at Exhibit 1.

5

A. That the defendant or counter-defendant failed to disclose a material fact.

B. The defendant or counter-defendant had actual knowledge of the fact.

C. The defendant's or counter-defendant's failure to disclose the fact caused the plaintiff or counter-plaintiffs to have a false impression.

D. When the defendant or counter-defendant failed to disclose the fact, that defendant or counter-defendant knew the failure would create a false impression.

E. When the defendant or counter-defendant failed to disclose the fact, that defendant or counter-defendant intended that the plaintiff or counter-plaintiff rely on the resulting false impression.

F. That the plaintiff or counter-plaintiff relied on the false impression, and;

G. That the plaintiff or counter-plaintiff was damaged as a result of such reliance.[11]

With respect to the reliance element of both fraud and silent fraud, the state court instructed:

Reliance. When I use the word relied, I mean the plaintiff or counter-plaintiff would not have entered into the agreement or continued the agreement if defendant or counter-defendant had not made the representation or promises, even if the representation or promises was not the only reason for the plaintiff or counter-plaintiff's action.[12]

### iii. Unjust enrichment

The jury instruction for unjust enrichment was, in relevant part, as follows:

---

[11] *Id.* at 78 ln. 20 through 79 ln. 18.

[12] *Id.* at 80 lns. 9-14.

6

To establish a claim of unjust enrichment, the
counter-plaintiffs must prove:

1. Receipt of a benefit by the counter-defendants from the
counter-plaintiffs, and;

2. An inequity to the counter-plaintiffs resulting because of
the retention of the benefit by the counter-defendants.

When . . . unjust enrichment exists, the law operates to
imply a contract in order to prevent the unjust enrichment.
However, if you find that an actual express contract was entered
into by the parties covering the same subject matter, you may not
allow the counter-plaintiffs to recover under the theory of unjust
enrichment.[13]

### iv.  Breach of fiduciary duty

The jury instruction regarding breach of fiduciary duty was as follows:

The plaintiffs and counter-plaintiffs have alleged that each has
breached their fiduciary relationship with the other. Plaintiffs and
counter-plaintiffs have the burden to prove:

1. The existence of a fiduciary relationship.

2. Defendant or counter-defendant's breach.

3. Plaintiff or counter-plaintiffs were damaged as a result of
defendant or counter-defendant's breach.

Your verdict will be for the plaintiffs or counter-plaintiffs if
you find that each of these elements has been proved. If you find
for the plaintiffs, you must determine the amount of actual
damages resulting from the defendants['] or counter-defendants['],
breach of their fiduciary duties that will place plaintiffs or
counter-plaintiffs in the economic position that they would have
enjoyed but for the breach. Your verdict will be for the defendants
or counter-defendants if you find that the plaintiffs or
counter-plaintiffs have failed to prove any one of these elements.

---

[13] *Id*. at 84 lns. 5-18.

When I use the word fiduciary duty, I mean any of the following:

1. Defendants and counter-defendants had an obligation or duty to act with the utmost good faith and integrity in their dealings with the plaintiffs or counter-plaintiffs in their partnership relationship.

2. Defendants and counter-defendants had an obligation or duty to disclose all known information that is significant and material to the affairs or property of the partnership relationship, or;

3. Defendants and counter-defendants had an obligation or duty to account to the partnership for any benefit and hold as trustee for it any profits derived by them without the consent of the plaintiffs and counter-plaintiffs or the other partners from any transaction connected with the conduct of the partnership or from any use by themselves of partnership property.

When I use the word[ ] breach, I mean any of the following:

1. The defendants failed to fulfill their obligations or duties to act with the utmost good faith and integrity in their dealings with one another in partnership affairs.

2. The defendants failed to fulfill their obligations or duty to disclose all known information that is significant and material to the affairs or property of the partnership, or;

3. The defendants failed to fulfill their obligation or duty to account to the partnership for any benefit and hold as trustee for it any profits derived by them without the consent of the plaintiffs or other partners from any transaction connected with the conduct or partnership . . . or from any use by themselves of partnership property.[14]

### v. Exemplary damages

Regarding exemplary damages, the state court instructed the jury, in relevant part, as

---

[14] *Id.* at 87 ln. 8 through 89 ln. 9.

8

follows:

> In addition to actual damages, the law permits the jury, under certain circumstances, to award the injured party exemplary damages. If you should find, by a preponderance of the evidence, that a plaintiff or counter-plaintiff is entitled to a verdict of actual or compensatory damages and further find that the defendants' or counter-defendants' acts which caused actual damages to the plaintiff or counter-plaintiff were maliciously, willfully, and wantonly done, then you may add to the award of actual damages an amount you agree is proper as exemplary damages.

> An act or failure to act is maliciously done if prompted or accompanied by ill-will, spite or grudge toward the injured party. An act or a failure to act is wantonly done if done in reckless or callous disregard of or indifference to the rights of one or more persons, including the injured party. An act or a failure to act is willfully done if done voluntarily and intentionally and with specific intent to do something the law forbids.[15]

### b. The jury verdict forms

After deliberating, the jury rejected all of the claims of the Korns and KFLP, and returned a verdict on the counterclaims in favor of Lenchner and the Lenchner Entities, against the Korns and KFLP, in the total amount of $1,745,000. The jury also returned a verdict in favor of Lenchner and the Lenchner Entities against "Sheldon Korn and/or Gale Korn" only for breach of fiduciary duty, in the amount of $250,000.

On the jury verdict forms, the jury answered questions regarding counterclaims, as follows (the jury's answers are in bold):

### FRAUD AND MISREPRESENTATION

> QUESTION NO. 1: Did Plaintiffs/Counter-Defendants, The Korn Family Limited Partnership and/or Sheldon Korn and/or Gale Korn and/or Shauna Korn and/or Ashley Korn commit an act

---

[15] *Id*. at 76 ln. 24 through 77 ln. 18.

9

or acts of fraud and misrepresentation against Defendants/Counter-Plaintiffs?

ANSWER: **YES**

QUESTION NO. 2:   What is the Defendants/Counter-Plaintiffs' total damages?

ANSWER :

AMOUNT **$250,000**

**SILENT FRAUD**

QUESTION NO. 1: Did Plaintiffs/Counter-Defendants, The Korn Family Limited Partnership and/or Sheldon Korn and/or Gale Korn and/or Shauna Korn and/or Ashley Korn commit silent fraud against Defendants/Counter-Plaintiffs?

ANSWER: **YES**

QUESTION NO. 2:   What is the Defendants/Counter-Plaintiffs' total amount of damages arising out of the Plaintiffs' silent fraud?

ANSWER :

AMOUNT **$1,070,000**

**UNJUST ENRICHMENT**

QUESTION NO. 1: Were Plaintiffs/Counter-Defendants, The Korn Family Limited Partnership and/or Sheldon Korn and/or Gale Korn and/or Shauna Korn and/or Ashley Korn either together or any one of them individually, unjustly enriched in obtaining money from Defendants/Counter-Plaintiffs?

ANSWER: **YES**

QUESTION NO. 2:   What is the Defendants/Counter-Plaintiffs' total amount of damages arising out of the Plaintiffs' unjust enrichment?

ANSWER :

AMOUNT **$175,000**

**BREACH OF FIDUCIARY DUTY**

QUESTION NO. 1: Did Plaintiffs/Counter-Defendants Sheldon Korn and/or Gale Korn owe a fiduciary duty to Defendants/Counter-Plaintiffs?

ANSWER: **YES**

QUESTION NO. 2:   Did Plaintiffs/Counter-Defendants Sheldon Korn and/or Gale Korn breach his/her/their fiduciary duty to Defendants/Counter-Plaintiffs?

ANSWER: **YES**

QUESTION NO. 3:   What is the Defendants/Counter-Plaintiffs' total damages?

ANSWER:

AMOUNT **$250,000**[16]

There was also a jury verdict for $250,000 in exemplary damages against the Korns and KFLP.  That verdict form is not in the record in this adversary proceeding, however, because none of the parties could locate it or obtain a copy of it.[17]  But there is in the record an excerpt of the state court trial transcript, where that verdict form was read by the jury foreperson on the record.  It states:

[JURY FOREPERSON:] Form of verdict, exemplary damages. We, the jury, make the following answers to the questions

---

[16]  Jury Verdict Forms (bold emphasis added).  A copy of the jury verdict forms for Lenchner's and the Lenchner Entities' counterclaims is attached as Exhibit H to the Motion (Docket # 27) at pdf. pp. 248-53.

[17]  *See* "Declaration in Support of Plaintiffs' Motion for Summary Judgment" (Docket # 57).

11

submitted by the Court:

Question No. 1: Are defendants/counter-plaintiffs, either together
or individually, entitled to exemplary damages?

Answer: Yes.

Questions No. 2: What is defendants/counter-plaintiffs' total
amount of exemplary damages?

Answer: Two hundred and fifty-thousand dollars.[18]

### c. The State Court Judgment

Based on the jury verdict, the state court entered a judgment in the State Court Lawsuit on

July 28, 2006 (the "Judgment"), which provides, in relevant part:

> **IT IS THEREFORE ORDERED AND ADJUDGED** that
> Plaintiffs take nothing, and their Complaint shall be dismissed on
> the merits, and that Defendants recover from Plaintiffs all taxable
> costs.

> **IT IS FURTHER ORDERED AND ADJUDGED** that
> Defendants recover from Plaintiffs, the Korn Family Limited
> Partnership, and/or Sheldon Korn and/or Gale Korn and/or Shauna
> Korn and/or Ashley Korn, the sum of $1,745,000.00 with interest
> thereon at the rate provided by law, from the date of the filing of
> the Counter-Complaint, plus all taxable costs.

> **IT IS FURTHER ORDERED AND ADJUDGED** that
> Defendants recover from Plaintiff, Sheldon Korn, and/or Gale
> Korn, the sum of $250,000, with interest thereon at the rate
> provided by law, from the date of the filing of the Counter-
> Complaint, in addition to the sum stated in the preceding paragraph
> of this Judgment, plus all taxable costs.[19]

After entry of the Judgment, KFLP and the Korns filed a motion for a judgment

---

[18] *See* Ex. G to Docket # 27 at 103 lns. 15-24.

[19] Judgment (emphasis in original) (Ex. D to Mot. (Docket # 27)) at pdf. pp. 180-82. A copy of
the Judgment is also attached to the adversary complaint (Docket # 1) at Exhibit 1.

12

notwithstanding the verdict, remittitur, or new trial, which the state trial court denied.

**d.  The appeal**

**1.  The Michigan Court of Appeals**

KFLP and the Korns appealed all aspects of the Judgment against them, except the $175,000 amount for unjust enrichment.  Thus, they appealed the Judgment components for silent fraud in the amount of $1,070,000; for fraud and misrepresentation in the amount of $250,000; for breach of fiduciary duty in the amount of $250,000, and for exemplary damages in the amount of $250,000.  Among the arguments KFLP and the Korns made to the Michigan Court of Appeals (the "Court of Appeals") (Case No. 272813) are the following:

- "[T]he trial court erred by denying their motions for directed verdict and JNOV regarding [Lenchner's and the Lenchner Entities'] claims of (A) fraud and (B) silent fraud."[20]

- "[A]ll plaintiffs may not be found liable for any fraud that Sheldon alone perpetrated."[21]  (The Korns and KLFP asserted that Lenchner and the Lenchner Entities "presented no evidence at trial that Gale, Shauna, or Ashley made a false statement on which Lenchner or [the Lenchner Entities]  reasonably relied.")[22]

- "[Lenchner's and the Lenchner Entities'] concert of action theory is unavailable because [Lenchner and the Lenchner Entities] voluntarily dismissed separate independent claims of civil conspiracy."[23]

- One of Lenchner's and the Lenchner Entities' theories of fraud; namely, that "Sheldon agreed to act like a partner but did not," could "not support a judgment of fraud because it was a promise only actionable for breach of contract, not fraud."[24]

---

[20]  Jan. 29, 2008 Ct. of Appeals Op. (attached to the Motion (Docket # 27) at Exhibit E) at 2.

[21]  *Id.* at 3.

[22]  *Id.*

[23]  *Id.* at 4.

[24]  *Id.* at 4-5.

- "[Lenchners' and the Lenchner Entities'] theory of fraud cannot sustain a judgment against all plaintiffs other than Sheldon because there was no proof of agency between Sheldon and the other plaintiffs [(Gail, Ashley, and Shauna Korn, and KFLP)].[25]

- "[T]he trial court committed plain error by not instructing the jury with M Civ JI 41.01 and M Civ. JI 41.02. This error . . . was compounded by the 'and/or' verdict form used [in the case] and resulted in manifest injustice."[26]

- "[T]he 'and/or' verdict form permitted the jury to award exemplary damages without finding the requisite malicious, willful and wanton conduct."[27]

- "The evidence did not support awarding exemplary damages against Gale, Shauna, Ashley and KFLP."[28]

On January 29, 2008, the Court of Appeals issued a written opinion rejecting all of these

arguments, as well as all of the other arguments the Korns and KFLP made on appeal, and

---

[25] *Id*. at 5.

[26] *Id.* at 9. The Court of Appeals quoted these two jury instructions:

> M Civ JI 41.01 (Two or More Defendants - Separate Consideration - Repeating Instructions) provides: "There are *[number]* defendants in this trial. Each defendant is entitled to separate consideration of [his / or / her] own defense. I shall not repeat my instructions for each defendant. Unless I tell you otherwise, all instructions apply to each defendant."
>
> M Civ JI 41.02 (Damages Where There Is No Allocation of Fault Between Defendants) provides: "If you find one of the defendants to be liable, you shall determine the amount of damages [he / or / she] caused and return a verdict in that amount. If you find more than one of the defendants to be liable, you shall return a separate verdict for the amount of damages you determine each defendant caused."

*Id.* at 9 nn.4-5.

[27] *Id.* at 9-10.

[28] *Id.* at 10.

affirming the Judgment in its entirety.[29]

The Court of Appeals interpreted the language on the "[jury] verdict forms naming each plaintiff and/or the other plaintiffs" [*i.e.*, KFLP and the Korns] for each counterclaim count, and the same language in the Judgment, to mean that the Judgment was "against all plaintiffs jointly and severally" in the total amount of $1,745,000, plus interest and taxable costs.[30]  And the Court of Appeals held, in relevant part, that:

- "defendants' legal theories that all plaintiffs are liable for fraud and silent fraud [are] sound and supported by evidence, which if viewed in the light most favorable to defendants, supports the jury verdict."[31]

- all plaintiffs could be liable for fraud if any one of them committed fraud because "[d]efendants theorized that all [the] Korns and KFLP were acting in concert to loot defendant companies for personal benefit" and "'where there is evidence that parties are acting in collusion, "[e]verything said, done, or written by any one of the parties to the combination, in furtherance of the common purpose, is deemed the act of all."'"[32]

- defendants' concert of action theory is available even though "defendants voluntarily dismissed separate independent claims of civil conspiracy."[33]  This is so because

> [t]he . . . concert of action theory does not depend on proving an independent claim of civil conspiracy. It requires evidence that parties knowingly acted to further a common purpose, in this case, to siphon company assets for the Korn family's personal use and benefit. Here, there was evidence from which the jury could infer all Korns knowingly participated in a common fraudulent scheme. There was testimony from Sheldon, Gale,

---

[29] *Id.* at 2.

[30] *Id.* at 2.

[31] *Id.* at 2-3.

[32] *Id.* at 3 (citations omitted).

[33] *Id.* at 4.

15

> and Shauna from which the jury could infer that the Korn family operated as a unit in its business dealings regarding the Lenchner companies. Further, there was testimony from which the jury could infer that Sheldon, Gale and Shauna participated in the fraudulent scheme. For example, there was evidence that Sheldon wrote checks to Gale for hundreds of thousands of dollars on company accounts, that Gale deposited the funds into KFLP (comprised of all Korn family members), and from which all family members could freely draw funds.[34]

The Court of Appeals stated further: "While both sides dismissed independent tort claims of civil conspiracy before submitting the case to the jury, this did not lessen the principle . . . regarding joint liability of codefendants for each others' acts (in this case co-plaintiffs) when engaged in a common fraudulent scheme."[35]

• defendants' theory of fraud based on an alleged unfulfilled promise by Sheldon to act like a partner supports a judgment for fraud because although "[f]uture promises are contractual and do not constitute fraud . . . 'an unfulfilled promise to perform in the future is actionable when there is evidence that it was made with a present undisclosed intent not to perform'" and "the jury could reasonably have determined from the evidence that Sheldon never intended to fulfill his promise, intended Lenchner to rely and act on it, and that Lenchner and [the Lenchner Entities] reasonably relied on the false promise and were thereby defrauded."[36]

• defendants' concert of action theory did not depend on them asserting that an agency relationship existed between Sheldon and his other family members for the same reason that such theory did not depend on defendants asserting a civil conspiracy claim; namely because "defendants posited that the Korns acted in concert to perpetrate a common fraudulent scheme."[37]

• "the jury could reasonably have concluded that Lenchner reasonably relied on the false impression created by the Korns, so he continued funding the companies, and as

---

[34]  *Id.* (citations omitted).

[35]  *Id.* at 8.

[36]  *Id.* at 5 (citation omitted).

[37]  *Id.* at 5.

16

a result, sustained over a million dollars in damages."[38]

- "plaintiffs waived any error regarding the 'and/or' verdict form and a determination of each individual plaintiff's liability[.]"[39]

- because "plaintiffs apparently concede by not arguing to the contrary that the evidence at trial supported an award of exemplary damages against Sheldon [and] [b]ecause plaintiffs waived any error regarding the 'and/or' verdict form and a determination of each individual plaintiff's liability[,]" exemplary damages were properly awarded against all the plaintiffs.[40]

## 2.  The Michigan Supreme Court

After the Michigan Court of Appeals affirmed the Judgment, KFLP and the Korns sought leave to appeal from the Michigan Supreme Court.  On July 29, 2008, the Michigan Supreme Court denied such application.[41]

## B.  Sheldon's bankruptcy case

On January 29, 2014, Sheldon filed a voluntary petition for relief under Chapter 7. Plaintiffs filed this adversary proceeding, seeking a determination that the Judgment debt to them is not dischargeable in Sheldon's bankruptcy case.

## II.  Jurisdiction

This Court has subject matter jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D. Mich.). This is a core proceeding under 28 U.S.C. §§ 157(b)(1) and 157(b)(2)(I).

This proceeding also is "core" because it falls within the definition of a proceeding

---

[38]  *Id.*

[39]  *Id.* at 10.

[40]  *Id.*

[41]  *See* Ex. F to Mot. (Docket # 27).

17

"arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning

of 28 U.S.C. § 1334(b). Matters falling within either of these categories in § 1334(b) are

deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21,

27 (Bankr. E.D. Mich. 2009). This is a proceeding "arising under title 11" because it is "created

or determined by a statutory provision of title 11," *id.*, namely, 11 U.S.C. §§ 523(a)(2), 523(a)(4),

and 523(a)(6), discussed below. And this matter is a proceeding "arising in" a case under title 11,

because it is a proceeding that "by [its] very nature, could arise only in bankruptcy cases." *Id.*

## III. Discussion

### A. Summary judgment standard

Fed. R. Civ. P. 56(a), made applicable to bankruptcy adversary proceedings by Fed. R.

Bankr. P. 7056, provides that "[t]he court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." As this Court has noted previously,

> *In Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149–50 (6th
> Cir.1995), the court elaborated:
>
>> The moving party has the initial burden of proving
>> that no genuine issue of material fact exists and that
>> the moving party is entitled to judgment as a matter
>> of law. To meet this burden, the moving party may
>> rely on any of the evidentiary sources listed in Rule
>> 56(c) or may merely rely upon the failure of the
>> nonmoving party to produce any evidence which
>> would create a genuine dispute for the [trier of fact].
>> Essentially, a motion for summary judgment is a
>> means by which to challenge the opposing party to
>> 'put up or shut up' on a critical issue.
>>
>> If the moving party satisfies its burden, then the
>> burden of going forward shifts to the nonmoving

18

party to produce evidence that results in a conflict
of material fact to be resolved by [the trier of fact].
In arriving at a resolution, the court must afford all
reasonable inferences, and construe the evidence in
the light most favorable to the nonmoving party.
However, if the evidence is insufficient to
reasonably support a . . . verdict in favor of the
nonmoving party, the motion for summary judgment
will be granted. Thus, the mere existence of a
scintilla of evidence in support of the plaintiff's
position will be insufficient; there must be evidence
on which the [trier of fact] could reasonably find for
the plaintiff.
. . .

Finally, the Sixth Circuit has concluded that, in the
"new era" of summary judgments that has evolved
from the teachings of the Supreme Court in
*Anderson* [*v. Liberty Lobby, Inc*., 477 U.S. 242, 106
S.Ct. 2505, 91 L.Ed.2d 202 (1986)], *Celotex* [*Corp.
v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91
L.Ed.2d 265 (1986)] and *Matsushita* [*Electric
Indus. Co.*, *Ltd. v. Zenith Radio Corp*., 475 U.S.
574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)], trial
courts have been afforded considerably more
discretion in evaluating the weight of the
nonmoving party's evidence. The nonmoving party
must do more than simply show that there is some
metaphysical doubt as to the material facts. If the
record taken in its entirety could not convince a
rational trier of fact to return a verdict in favor of
the nonmoving party, the motion should be granted.

*Id.* (internal quotation marks and citations omitted). In determining
whether the moving party has met its burden, a court must "believe
the evidence of the nonmovant, and draw all justifiable inferences
in favor of the nonmovant." *Ingram v. City of Columbus*, 185 F.3d
579, 586 (6th Cir.1999) (relying on *Russo v. City of Cincinnati*,
953 F.2d 1036, 1041–42 (6th Cir.1992)).

*McCallum v. Pixley* (*In re Pixley*), 456 B.R. 770, 774-75 (Bankr. E.D. Mich. 2011)("*Pixley* I").

**B. Collateral estoppel**

19

The Motion requires the Court to decide whether, under the doctrine of collateral estoppel, the Judgment precludes Sheldon from contesting the nondischargeability of the debt he owes to Plaintiffs under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and/or 523(a)(6).  Collateral estoppel applies in nondischargeability proceedings under § 523(a) of the Bankruptcy Code, such as this one.  *See Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).  As this Court noted in *Pixley I*,

> "Collateral estoppel . . . prevents a party from relitigating issues of fact or law which were necessarily decided by a previous final judgment." *Smith v. Sushka*, 117 F.3d 965, 969 (6th Cir.1997).  In determining whether a state court judgment precludes relitigation of issues under the doctrine of collateral estoppel, the Full Faith and Credit Statute, 28 U.S.C. § 1738,[2] requires bankruptcy courts to "'consider first the law of the State in which the judgment was rendered to determine its preclusive effect.'" *Bay Area Factors v. Calvert* (*In re Calvert* ), 105 F.3d 315, 317 (6th Cir.1997) (quoting *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 375, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)). If the state courts would not deem the judgment binding under collateral estoppel principles, then the bankruptcy court cannot do so either. But if the state courts would give preclusive effect to the judgment, then the bankruptcy court must also give the judgment preclusive effect, "unless Congress has expressly or impliedly created an exception to § 1738 which ought to apply to the facts before the federal court." *Id.* (citing *Marrese*, 470 U.S. at 386, 105 S.Ct. 1327).

> In *Calvert*, the Sixth Circuit held that there is no such express or implied exception under § 1738 in dischargeability actions. The court found no indication of such an exception "in the Bankruptcy Code or legislative history."

---

[2]

The Full Faith and Credit Statute provides in relevant part:

> The . . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State ... from which they are taken.

28 U.S.C. § 1738.

*Pixley I*, 456 B.R. at 775-76.

Because the Judgment at issue was entered in the Charlevoix Circuit Court in the state of

Michigan, the Court must look to Michigan law to determine the collateral estoppel effect of that

Judgment.

> Under Michigan law, the following requirements must be
> met in order for collateral estoppel to apply:
>
> > 1) there is identity of parties across the proceedings,
> >
> > 2) there was a valid, final judgment in the first
> > proceeding,
> >
> > 3) the same issue was actually litigated and
> > necessarily determined in the first proceeding, and
> >
> > 4) the party against whom the doctrine is asserted
> > had a full and fair opportunity to litigate the issue in
> > the earlier proceeding.
>
> *Phillips v. Weissert* (*In re Phillips* ), 434 B.R. 475, 485 (6th Cir.
> BAP 2010) (citation omitted).
> . . .
>
> Under Michigan law, an issue is "actually litigated" if it is
> "put into issue by the pleadings, submitted to the trier of fact for
> determination, and is thereafter determined." *Phillips*, 434 B.R. at
> 486 (majority opinion) (quoting *Latimer v. William Mueller & Son,
> Inc.*, 149 Mich.App. 620, 386 N.W.2d 618, 627 (1986)); *Phillips*,
> 434 B.R. at 490 (Rhodes, J., concurring) (same).
> . . .
>
> An issue that is "actually litigated" is also considered to be
> "necessarily determined" if "it is necessary to the judgment." *See
> id.* at 493; *see also Rohe Scientific Corp. v. Nat'l Bank of Detroit*,
> 133 Mich.App. 462, 350 N.W.2d 280, 282 (1984) (citation
> omitted) ("Collateral estoppel applies to default judgments;
> however the default judgment is conclusive only as to those

> matters essential to support the judgment."); *Detroit Automobile Inter–Insurance Exchange v. Higginbotham*, 95 Mich.App. 213, 290 N.W.2d 414, 418 (1980)(same). Whether an "actually litigated" issue is also "necessary to the judgment," or "essential to the judgment," in turn, depends on the elements of the claim or defense involved.

*Pixley I*, 456 B.R. at 776, 778-79.

In determining whether a state court judgment collaterally estops a debtor from contesting the necessary elements of a claim under 11 U.S.C. §§ 523(a)(2), 523(a)(4), and/or 523(a)(6),

> the language of the judgment itself is not controlling, but rather the Court must look to the "entire record in the original action" to determine the "exact nature of the debt on which such judgment was based." "It is well settled that the court will look behind a . . . judgment, to ascertain the nature of the debt, and if it is ascertained to be one which a discharge (in bankruptcy) does not bar, it will be so adjudged."

*Chamberlain v. Messer* (*In re Messer*), 500 B.R. 875, 880 (Bankr. E.D. Mich. 2013)(quoting

*Tudryck v. Mutch*, 30 N.W.2d 512, 514 (Mich. 1948))(Bankruptcy Act case).

> Under Michigan law, "[c]ollateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally." *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 631 (1990) (emphasis added, citations omitted). Without knowing the basis of the judgment, a court cannot make the determination that the judgment depended on a determination of the issue in question.

*Id.* at 882.

## C. Sheldon's arguments as to why collateral estoppel does not apply

Sheldon argues that "collateral estoppel does not apply to any of Plaintiffs' alleged exceptions from discharge" because not all of the elements of §§ 523(a)(2), 523(a)(4), or

22

523(a)(6) were "actually litigated" and "necessarily determined" in the State Court Lawsuit.[42]

Sheldon also argues that collateral estoppel does not apply because the Court cannot ascertain the

basis of the Judgment, "clearly, definitely, and unequivocally."[43]

## D. Principles applicable to all exceptions to discharge

In order to prevail on the exceptions to discharge under § 523(a), including §§ 523(a)(2),

523(a)(4), and 523(a)(6), a plaintiff has the burden of proving each of the elements of non-

dischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291

(1991); *see also Rembert v. AT & T Universal Card Servs., Inc*., 141 F.3d 277, 281 (6th Cir.

1998)(citing *Grogan*, 498 U.S. at 291). "[E]xceptions to discharge are to be strictly construed

against the creditor." *Rembert*, 141 F.3d at 281 (citation omitted).

The Court will discuss in detail each of Plaintiffs' § 523(a) claims, beginning with

Plaintiffs' claims under § 523(a)(2).

## E. Lenchner and the Lenchner Entities' § 523(a)(2)(A) claim

## 1. Elements under § 523(a)(2)(A)

Section 523(a)(2)(A) of the Bankruptcy Code provides:

> (a) A discharge under section 727 . . . of this title does not
> discharge an individual debtor from any debt–
> . . .
>
> (2) for money, property, services, or an extension, renewal, or
> refinancing of credit, to the extent obtained by--
>
> > (A) false pretenses, a false representation, or actual
> > fraud, other than a statement respecting the debtor's

---

[42] Def.'s Br. in Opp'n to Pls.' Mot. for Partial Summ. J. (Docket # 37) at 6-7.

[43] *Id*. at 11, 19.

or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A). "This section is phrased in the disjunctive, meaning that false

pretenses, false representation and actual fraud are three separate grounds for nondischargeability

[under § 523(a)(2)(A)]." *Becton, Dickinson & Co. v. Sterling* (*In re Sterling*), 479 B.R. 444, 449

(Bankr. E.D. Mich. 2012)(citations omitted); *see also Tweedie v. Hermoyian* (*In re Hermoyian*),

466 B.R. 348, 363 (Bankr. E.D. Mich. 2012). Lenchner and the Lenchner Entities seek summary

judgment on their § 523(a)(2)(A) claims based on all three grounds.

**a. False representation**

The elements of a § 523(a)(2)(A) claim based on a false representation are:

> "(1) the debtor obtained money [property, services, or an
> extension, renewal, or refinancing of credit] through a material
> misrepresentation that, at the time, the debtor knew was false or
> made with gross recklessness as to its truth; (2) the debtor intended
> to deceive the creditor; (3) the creditor justifiably relied on the
> false representation; and (4) its reliance was the proximate cause of
> loss."

*Willens v. Bones* (*In re Bones*), 395 B.R. 407, 430 (Bankr. E.D. Mich. 2008)(quoting *Rembert v.*

*AT &T Universal Card Servs., Inc.*, 141 F.3d 277, 280-81 (6th Cir. 1998)). "A 'failure to

disclose can amount to misrepresentation. A condition to invocation of the doctrine, however, is

that there be a duty to make disclosure.'" *Id.* at 429 (quoting *Rowe v. Steinberg* (*In re Steinberg*),

270 B.R. 831, 835 (Bankr. E.D. Mich. 2001)).

**b. False pretenses**

The phrase "false pretenses" has been defined this way:

> "A 'false pretense' involves an implied misrepresentation or
> conduct intended to create or foster a false impression. A false
> pretense has been defined to include a 'mute charade,' where the

24

debtor's conduct is designed to convey an impression without oral representation." *Schafer v. Rapp* (*In re Rapp*), 375 B.R. 421, 433 (Bankr.S.D.Ohio 2007) (quotation marks and citation omitted). It has also been described as "usually, but not always, the product of multiple events, acts or representations undertaken by a debtor which purposely create a contrived and misleading understanding of a transaction...." *Evans v. Dunston* (*In re Dunston*), 117 B.R. 632, 641 (Bankr.D.Colo.1990), *aff'd in part and rev'd in part on other grounds*, 146 B.R. 269 (D.Colo.1992). The failure to disclose a material fact can form the basis of either a material misrepresentation or false pretense. *See Semaan v. Allied Supermarkets, Inc.*, 951 F.2d 718, 728 (6th Cir.1991) ("That such deception takes the form of an intentional nondisclosure of a material fact or an implied representation makes no difference."). A debtor's silence may also "create a false impression which would be actionable under § 523(a)(2)(A)...." *Brann v. Oxford* (*In re Oxford*), 440 B.R. 772, 777 (Bankr.W.D.Ky.2010) (citation omitted).

*Hermoyian*, 466 B.R. at 377. As is the case with a claim under § 523(a)(2)(A) based on a false representation, a creditor making a false pretenses claim under § 523(a)(2)(A) must also establish materiality; intent; justifiable reliance; and causation. *See Hermoyian*, 466 B.R. at 379 (relying in part on *Brann v. Oxford* (*In re Oxford*), 440 B.R. 772, 777 (Bankr. W.D. Ky. 2010)).

**c. Actual fraud**

"Actual fraud is broader than misrepresentation." *Mellon Bank, N.A. v. Vitanovich* (*In re Vitanovich*), 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001).

> [A]ctual fraud encompasses "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." . . . "Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining fraud, and it includes all surprise, trick, cunning, dissembling, and any unfair way by which another is cheated."

> "Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. It requires intent to deceive or defraud." . . .
>
> [A]ctual fraud as used 11 U.S.C. § 523(a)(2)(A) is not limited to misrepresentations and misleading omissions. When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code.

*Vitanovich*, 259 B.R. at 877.

Recently, in *Husky Int'l Elects., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016), the United States Supreme Court stated and described the elements of "actual fraud" under § 523(a)(2)(A):

> "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."

(citation omitted).

In *Husky,* the individual Chapter 7 bankruptcy debtor, Ritz, had used his position as a director and shareholder in a corporation, Chrysalis, to cause that corporation to make a series of fraudulent transfers to other entities that Ritz controlled. Husky, a trade creditor of Chrysalis, claimed that these transfers amounted to "actual fraud" by Ritz, and created a nondischargeable debt owing by Ritz to Husky. In describing the agreed facts of the case, the Supreme Court stated that "Ritz drained Chrysalis of assets it could have used to pay its debts to creditors like Husky by transferring large sums of Chrysalis' funds to other entities Ritz controlled." 136 S.

26

Ct. at 1585.  The issue before the Supreme Court was whether this "intercompany transfer scheme" could constitute "actual fraud" under § 523(a)(2)(A), even though it did not involve any false representation by the bankruptcy debtor Ritz.  Husky argued in the United States Court of Appeals for the Fifth Circuit and in the Supreme Court that "Ritz' asset-transfer scheme was effectuated through a series of fraudulent conveyances — or transfers intended to obstruct the collection of debt," and that this was "a recognizable form of 'actual fraud.'" *Id.* at 1586.  The Fifth Circuit rejected that argument, holding that "actual fraud" required a misrepresentation. The Supreme Court reversed.

The Supreme Court held that the "actual fraud" ground for nondischargeability under § 523(a)(2)(A), unlike the false representation ground, "encompasses forms of fraud . . . that can be effected without a false representation;" without a creditor's reliance on any statements, actions, or omissions by the debtor; and without the fraud occurring at the inception of the transaction(s) between the debtor and the creditor.  *Id.* at 1586-90.  The Court distinguished fraud consisting of fraudulent conveyances from what it called "inducement-based fraud" — *i.e.*, fraud that induced some detrimental reliance by a creditor, such as fraud based on a debtor's misrepresentation.  The Court stated:

> Equally important, the common law also indicates that fraudulent conveyances, although a "fraud," do not require a misrepresentation from a debtor to a creditor.  As a basic point, **fraudulent conveyances are not an inducement-based fraud**. Fraudulent conveyances typically involve "a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration."  In such cases, **the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt**. It is in the acts of concealment and hindrance.  In the fraudulent-conveyance context, therefore, the opportunities for a false representation from the debtor to the creditor are limited.

27

> The debtor may have the opportunity to put forward a false
> representation if the creditor inquires into the whereabouts of the
> debtor's assets, but that could hardly be considered a defining
> feature of this kind of fraud.

*Id.* at 1587 (emphasis added) (citations omitted).

Under *Husky* and the pre-*Husky* case law, it is clear that "actual fraud" is broad enough to cover any form of fraud that is done with wrongful intent or that involves moral turpitude, including inducement-based fraud such as fraud based on a misrepresentation. One of the questions that arises after *Husky*, and that matters in this case, is whether the element of "justifiable reliance" — that is, actual reliance by the creditor that is "justifiable" — is necessary to establish "actual fraud" under § 523(a)(2)(A), when the fraud alleged is an inducement-based form of fraud. It is clear from *Husky* that "actual fraud" based on one or more fraudulent transfers does *not* require a showing of reliance, actual or justifiable. But in the present case, the alleged "actual fraud" by the Debtor is that the Debtor by words and/or conduct intentionally created a false impression intended to deceive the creditors, and that the creditors relied on such false impressions to their damage. In such a case, is it necessary for the creditor to prove "justifiable reliance" on the false impression? The Court concludes that the answer to this question is yes, based on the following review of cases decided both before and after *Husky*, and based on *Husky* itself.

Numerous cases decided before *Husky* held that justifiable reliance is a required element of "actual fraud" under § 523(a)(2)(A). Cases in this district, for example, held that "[t]o establish actual fraud, Plaintiff must show (1) a course of conduct intended to deceive; (2) justifiable reliance; and (3) proximate causation." *Sterling,* 479 B.R. 444, 449 (Bankr. E.D.

28

Mich. 2012)(emphasis added); *see also General Motors, LLC v. Gunner* (*In re Gunner*), No. 10-7685, 2013 WL 6628629, at *4 (Bankr. E.D. Mich. Dec. 10, 2013) (emphasis added) ("Actual fraud, which is broader than misrepresentation, requires a showing of (1) a course of conduct intended to deceive; (2) justifiable reliance; and (3) proximate causation.") (citing *Vitanovich*, 259 B.R. at 877 and *Rakich v. Jagiello* (*In re Jagiello*), No. 12–4096, 2013 WL 4068166, at *6 (Bankr. E.D. Mich. Aug. 8, 2013)); *Hermoyian*, 466 B.R. at 380 ("actual fraud" requires proof of "intent, justifiable reliance, and proximate cause.") (citing *Fields v. Mans*, 516 U.S. 59, 74-75 (1995)).

In *Field v. Mans*, 516 U.S. 59, 66 (1995) the Supreme Court stated:

> While § 523(a)(2)(A) speaks of debt for value "obtained by ... false pretenses, a false representation, or actual fraud," it does not define those terms or so much as mention the creditor's reliance as such, let alone the level of reliance required. No one, of course, doubts that some degree of reliance is required to satisfy the element of causation inherent in the phrase "obtained by[.]"

In *Field v. Mans*, without distinguishing between the three types of fraud under § 523(a)(2)(A), the Court held that the level of reliance necessary under § 523(a)(2)(A) is "justifiable, but not reasonable, reliance."[44] *Id.* at 74-75 (citations omitted); *see also Rembert*, 141 F.3d at 281

---

[44]  In *Field v. Mans*, 516 U.S. 59 (1995), the Supreme Court explained what justifiable reliance means for purposes of § 523(a)(2)(A):

> [A] person is justified in relying on a representation of fact although he might have ascertained the falsity of the representation had he made an investigation. . . . Although the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases. Justifiability is not without some limits, however. . . . [A] person is required to use his senses, and cannot recover if he blindly relies upon a

29

(listing the elements of nondischargeability under § 523(a)(2)(A), including justifiable reliance).

Despite this, some cases decided after *Field v. Mans* held that "actual fraud" does not always require reliance by the creditor on anything the debtor said or did. But these cases were mostly like *Husky*, in that they did not involve inducement-based forms of fraud, such as a misrepresentation. *See, e.g., McClellan v. Cantrell*, 217 F.3d 890, 892-94 (7th Cir.2000) (case involved bankruptcy debtor's participation with her brother in a fraudulent conveyance scheme designed to thwart collection of a debt owed by the brother; court distinguished *Field v. Mans* and held that for "actual fraud," "reliance is relevant only when a fraud takes the form of a misrepresentation."); *Schafer v. Rapp* (*In re Rapp*), 375 B.R. 421, 434 (Bankr. S.D. Ohio 2007) ("The fact patterns of [*Mellon Bank, N.A. v.*] *Vitanovich* [(*In re Vitanovich*), 259 B.R. 873 (B.A.P. 6th Cir. 2001)(check kiting scheme)], and *McClellan* [*v. Cantrell*, 217 F.3d 890 (7th Cir.2000)] illustrate that an objecting creditor need not in all cases demonstrate that the debtor made an express fraudulent representation—and that the creditor justifiably relied thereon—to obtain a judgment excepting a debt from discharge under § 523(a)(2)(A).").

This Court concludes that even after the Supreme Court's 2016 decision in *Husky*,

---

> misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.
> . . .
>
> [I]t is only where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation of his own.

*Id.* at 70-71 (internal quotation marks and citations omitted). By contrast, reasonable reliance "entail[s] a duty to investigate[,]" and is therefore, a higher degree of reliance than justifiable reliance. *Id.* at 77; *see also Pixley I*, 456 B.R. at 782 (citation omitted)("The element of 'justifiable' reliance under § 523(a)(2)(A) is a less demanding requirement than 'reasonable' reliance, which is an element of fraud under § 523(a)(2)(B).").

justifiable reliance by the creditor *is* a necessary element of "actual fraud" under § 523(a)(2)(A), *when* the form of fraud is what *Husky* referred to as "inducement-based fraud." In this respect, *Husky* did not change prior law. This Court is bound by the Supreme Court's decision in *Field v. Mans*, and by the Sixth Circuit's decision in the *Rembert* case, cited above, both of which hold that all three types of fraud under § 523(a)(2)(A) — false representation; false pretenses; and actual fraud — require justifiable reliance. *Husky* changed that rule in only one respect, in holding that reliance is not required when the "actual fraud" is not an inducement-based fraud, but rather some other form of fraud such as a fraudulent conveyance scheme. At least one post-*Husky* case has taken this view of *Husky*, and this Court agrees with it. *See Argento v. Cahill* (*In re Cahill*), No. 15-8298, 2017 WL 713565, at *7 (Bankr. E.D.N.Y. February 22, 2017) (noting that "[w]hile *Husky* expanded the definition of actual fraud to include more than fraud based on a misrepresentation, the Supreme Court clearly held that "actual fraud" also encompasses fraudulent inducement based on a misrepresentation;" and holding that under *Field v. Mans*, justifiable reliance is still required for "actual fraud" involving a misrepresentation.)

This view of *Husky* is consistent with the Supreme Court's discussion in *Husky* of *Field v. Mans*. The Supreme Court in *Husky* considered *Field v. Mans*, 516 U.S. 59, 66 (1995) "in which the Court noted that certain forms of bankruptcy fraud require a degree of direct reliance by a creditor on an action taken by a debtor." *Husky*, 136 S. Ct. at 1589. The *Husky* Court interpreted this statement in *Field v. Mans* to apply only to "fraud perpetrated through a misrepresentation." *See Husky*, 136 S. Ct. at 1589-90. The *Husky* Court stated:

> The dissent . . . contend[s] that the phrase "obtained by ... actual fraud" requires not only that the relevant debts "resul[t] from" or be "traceable to" fraud but also that they "result from fraud *at the*

> *inception of a credit transaction.*" *Post*, at 1591 (emphasis added).
> Nothing in the text of § 523(a)(2)(A) supports that additional
> requirement. The dissent bases its conclusion on this Court's
> opinion in *Field*, in which the Court noted that certain forms of
> bankruptcy fraud require a degree of direct reliance by a creditor on
> an action taken by a debtor. But *Field* discussed such "reliance"
> only in setting forth the requirements of the form of fraud alleged
> in that case — namely, fraud perpetrated through a
> misrepresentation to a creditor. *See* 516 U.S., at 61, 116 S.Ct. 437.
> The Court was not establishing a "reliance" requirement for frauds
> that are not premised on such a misrepresentation.

*Id.* (italics in original).

This Court's conclusion makes the most sense in light of both *Field v. Mans* and *Husky*.

It makes sense to apply the same justifiable reliance requirement to all forms of inducement-

based fraud, with respect to all three types of fraud listed in § 523(a)(2)(A) (false representation;

false pretenses; actual fraud). And *Husky* does not hold otherwise. Actual reliance by the

creditor is inherent in inducement-based fraud — *i.e.*, the creditor is induced to rely in some way

to its detriment (*e.g.*, lending money) on the false representation or false impression created by

the debtor's words, silence, or conduct. To require that such actual reliance be justifiable for

purposes of "false representation" and "false pretenses" but not for purposes of "actual fraud"

under § 523(a)(2)(A), does not make sense.

**2. Lenchner's and the Lenchner Entities' collateral estoppel argument regarding their § 523(a)(2) claim**

Lenchner and the Lenchner Entities argue that under collateral estoppel, the jury verdicts

for fraud and misrepresentation, and for silent fraud, preclude Sheldon from contesting that the

Judgment debt based on these verdicts is nondischargeable under 11 U.S.C. § 523(a)(2)(A).

Sheldon argues that certain elements of § 523(a)(2)(A) were not "actually litigated" and

"necessarily determined" in the State Court Lawsuit. Sheldon argues that "[Lenchner and the Lenchner Entities] were not required to prove that [Sheldon] obtained any money through a material misrepresentation . . . or that [Lenchner and the Lenchner Entities] 'justifiably' relied on the false representation."[45]

According to Sheldon, collateral estoppel does not preclude litigation of the "obtained by element" of § 523(a)(2)(A), based on the state court jury verdict, because "[a] plaintiff in a Michigan state court action for fraud need not show that *the defendant obtained money or property* through a material misrepresentation; however, such is required in a § 523(a)(2)(A) claim."[46] And, according to Sheldon, "[t]he jury in the Charlevoix Circuit Court case did not clearly, definitely and unequivocally determine that [he] personally obtained money, property, or services on account of any misrepresentation and, if so to what extent."[47] For these reasons, Sheldon argues that collateral estoppel does not bar litigation of the "obtained by" element of § 523(a)(2)(A).

Also, according to Sheldon, collateral estoppel does not preclude litigation of the "justifiable reliance element" of § 523(a)(2)(A). Sheldon argues that "'justifiable reliance' was not "necessarily determined" in the state court jury verdicts because it was not an element of a cause of action for fraud under Michigan common law," at least at the time the case was submitted to the jury (on May 26, 2006),[48] while it is an element of fraud under § 523(a)(2)(A).

---

[45] Def.'s Br. in Opp'n to Pls.' Mot. for Partial Summ. J. (Docket # 37) at 8.

[46] *Id.* at 12 (emphasis added).

[47] *Id.* at 13.

[48] For Sheldon's argument regarding the justifiable reliance element of § 523(a)(2)(A), Sheldon relies on a 2009 bench opinion given by the undersigned judge, in two consolidated adversary

33

And according to Sheldon, even if justifiable reliance was an element of fraud when the case was submitted to the jury, the justifiable reliance element of § 523(a)(2)(A) was not "actually litigated." This is so, Sheldon says, because the jury was not instructed that it had to determine whether Lenchner and the Lenchner Entities justifiably (or reasonably) relied on any alleged fraudulent misrepresentations and/or non-disclosures by the Korns.[49] Sheldon argues that:

> in order to determine what was actually litigated and necessarily determined, the key is to look at the jury instructions - because those instructions reflect what was "submitted to the trier of fact for determination" and to discern what was "thereafter determined." . . . [O]n the issue of reliance, **the instructions to the jury were clear- the jury only needed to find that "[Lenchner and the Lenchner Entities] did rely on the representation.**" The

---

proceedings in which Lenchner and the Lenchner Entities filed a nondischargeability action against Ashley Korn and Shauna Korn. (Adv. Pro. Nos. 08-5001, 08-5002). In that bench opinion, this Court held that neither justifiable reliance nor reasonable reliance was an element of a fraud claim under Michigan common law. But, as Sheldon recognized on page 9 of his brief in opposition to the Motion, the undersigned judge later ruled otherwise in the Court's 2011 decision in *Pixley I*, 456 B.R. at 782. Relying on *Cooper v. Auto Club Ins. Ass'n*, 751 N.W.2d 443, 451-52 (Mich. 2008), this Court held that "under Michigan law, fraud requires proof of actual reliance that is 'reasonable'" and that "[t]he element of 'justifiable' reliance under § 523(a)(2)(A) is a less demanding requirement than 'reasonable' reliance, which is an element of fraud under § 523(a)(2)(B)." For that reason, this Court held that "establishing that reliance was reasonable, as Michigan law requires for fraud, necessarily also establishes that such reliance was "justifiable" as required under § 523(a)(2)(A)." *Pixley I*, 456 B.R. at 782.

But according to Sheldon, "in May of 2006, when the Charlevoix Circuit Court issued its jury instructions, the [c]ircuit [c]ourt did not have the benefit of the *Cooper* [c]ourt's analysis and thus, did not require any determination of reasonable or justifiable reliance."

Lenchner and the Lenchner Entities counter this argument by arguing that "the reasonableness of Plaintiffs' reliance is subsumed as an implicit element of the materiality of [Sheldon's] misrepresentations, which were actually litigated and necessarily determined in [the State Court Lawsuit]." (Pls.' Reply Br. in Supp. of Mot. (Docket # 50) at 3.) Alternatively, Lenchner and the Lenchner Entities argue that "the reasonableness of Plaintiffs' reliance is part of the reliance element which was actually litigated and necessarily determined [in the State Court Lawsuit]." (*Id.* at 4.) With regard to the "duty to disclose" element of silent fraud, Lenchner and the Lenchner Entities argue that "[t]he materiality of the non-disclosure incorporates [Sheldon's] duty to disclose." (*Id.* at 3.)

[49] Def.'n Br. in Opp'n to Pls.' Mot. for Partial Summ. J. (Docket # 37) at 8-10.

34

jury did not have to find "reasonable" or "justifiable" reliance.[50]

According to Sheldon, because the "actually litigated" and "necessarily determined" elements of

collateral estoppel are not satisfied with regard to the foregoing elements of Plaintiffs'

§ 523(a)(2)(A) claim, Lenchner's and the Lenchner Entities' motion for summary judgment on

their § 523(a)(2)(A) claims must be denied.

Sheldon argues further that the motion for summary judgment must be denied because:

> the use of the words "and/or" throughout the jury verdict forms and
> the Judgment makes it is impossible for this Court to determine
> upon what basis the jury reached its verdict with respect to
> [Lenchner's and the Lenchner Entities'] Fraud and
> Misrepresentation claim, or to ascertain clearly, definitely and
> unequivocally the basis of that portion of the Judgment relative to
> [Lenchner's and the Lenchner Entities'] Fraud and
> Misrepresentation claim.[51]

Here Sheldon argues that because of the "and/or" form of the jury verdict forms, they cannot be

construed as establishing his personal liability for fraud and misrepresentation or silent fraud.[52]

Sheldon argues that collateral estoppel also does not apply to the Lenchner and the

Lencher Entities' § 523(a)(2)(A) claim based on the silent fraud jury verdict, for the additional

reason that "the jury instruction does not contain the element that 'there be a duty to make

disclosure,'" which is a necessary element under § 523(a)(2)(A) for a failure to disclose to

constitute a misrepresentation.

---

[50] *Id.* at 10 (emphasis in original).

[51] *Id.* at 11-12.

[52] Lenchner and the Lenchner Entities point out that Sheldon's argument here is directly contrary to the position he took in the State Court Lawsuit on appeal. Lenchner and the Lenchner Entities point out that on appeal to the Michigan Court of Appeals, Sheldon "argued that his co-defendants may not be found liable for the fraud that he alone perpetrated."

35

**3. The Court concludes that the "actually litigated" requirement of collateral estoppel is not satisfied with respect to the justifiable reliance element of 11 U.S.C. § 523(a)(2)(A).**

The Court agrees with Sheldon that the "actually litigated" requirement of collateral estoppel is not satisfied regarding the justifiable reliance element of 11 U.S.C. § 523(a)(2)(A). Lenchner and the Lenchner Entities seek summary judgment on their § 523(a)(2)(A) claim based on false pretenses, false representation, and actual fraud. But the only types of fraud claim submitted to the jury in the State Court Lawsuit were inducement-based fraud claims, involving fraudulent misrepresentation and silent fraud. Under the § 523(a)(2)(A) framework, these may be claims of false representation, false pretenses, and actual fraud. But as the Court discussed in Part III.E.1.c of this opinion, all such inducement-based fraud claims require the creditor to show justifiable reliance. And neither the element of justifiable reliance, nor the more demanding element of reasonable reliance, was submitted to the jury for decision.

Under Michigan law, the elements of fraudulent misrepresentation are:

> (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Titan Ins. Co. v. Hyten*, 817 N.W.2d 562, 567-68 (Mich. 2012)(citation omitted). The elements of a silent fraud claim are similar, except that they also include the elements that there was a duty to disclose, and a failure to disclose.[53] To "satisfy the reliance factor[,]" a plaintiff must "'show

---

[53] Under Michigan law, as explained in *Abbo v. Wireless Toyz Franchise, L.L.C.*, No. 304185, 2014 WL 1978185 (Mich. Ct. App. May 13, 2014), the failure to make a disclosure, when one has a duty to disclose, is the equivalent of a material misrepresentation:

The Court in *Abbo* explained:

36

that any reliance on [the defendant's] representations was reasonable.'" *Cooper v. Auto Club Ins.*

*Ass'n*, 751 N.W.2d 443, 451 (Mich. 2008)(quoting *Foreman v. Foreman*, 701 N.W.2d 167, 175

(Mich. Ct. App. 2005)).

---

> [F]raud may also result from inaction-silence-when there is a duty to
> speak. In a claim for silent fraud, "the suppression of a material fact,
> which a party in good faith is duty-bound to disclose, is equivalent to
> a false representation." *M & D, Inc. v. McConkey*, 231 Mich.App. 22,
> 28–29, 585 N.W.2d 33 (1998). Most recently, our Supreme Court
> described silent fraud as a doctrine that has "long been recognized in
> Michigan," holding that "when there is a legal or equitable duty of
> disclosure," fraud may arise from "suppression of the truth" with "intent
> to defraud." *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 557, 817 N.W.2d
> 562 (2012) (quotation marks and citation omitted).
>
> As discussed in greater detail, *infra*, defendants had a statutory
> duty to disclose those material facts "necessary" to make the [Uniform
> Franchise Offering Circular] statements "not misleading" under the
> circumstances in which they were presented. [The plaintiff's] silent
> fraud claim arose from a breach of this statutory obligation, as well as
> from defendant's common-law responsibility to truthfully respond to
> direct inquiries regarding hits and chargebacks, and to avoid creating
> false impressions when allaying [the plaintiff's] financial concerns. "[A]
> legal duty to make a disclosure will arise most commonly in a situation
> where inquiries are made by the plaintiff, to which the defendant makes
> incomplete replies that are truthful in themselves but omit material
> information." *Hord v. Environmental Research Inst.*, 463 Mich. 399,
> 412, 617 N.W.2d 543 (2000) (citations omitted).
>
> Thus, to prove silent fraud [the plaintiff] was required to
> establish that defendants (1) suppressed or concealed the truth by
> employing false and misleading words (2) with the intent to defraud or
> deceive, (3) while having a duty to disclose factually accurate
> information.

*Id.* at *5; *see also Hord v. Envtl. Research Inst. of Michigan*, 617 N.W. 2d 543, 550 (Mich.
2000)(citation omitted) ("Turning to the question of silent fraud, we agree with the analysis of the
conflict resolution panel in [*M & D, Inc. v.*] *McConkey*[, 585 N.W.2d 33 (Mich. Ct. App. 1998)] that
mere nondisclosure is insufficient. There must be circumstances that establish a legal duty to make a
disclosure."); *Barclae v. Zarb*, 834 N.W.2d 100, 115-16 (Mich. Ct. App. 2013)("Silent fraud is
essentially the same [as common-law fraud or fraudulent misrepresentation] except that it is based on a
defendant suppressing a material fact that he or she was legally obligated to disclose, rather than making
an affirmative misrepresentation. Such a duty may arise by law or by equity[.]").

37

As the Court explained in *Pixley I*, before 2008, the law in Michigan was unclear

regarding whether reliance had to be reasonable, as an element of a fraud claim.[54]  But it is

---

[54]  This Court explained in *Pixley I*, 456 B.R. at 779-81, that:

> [u]nder Michigan law, the necessity of proving justifiable or reasonable
> reliance to establish fraud has not been so clear. At least before 2008,
> there was some reason to question whether Michigan law includes, as an
> element of proving fraud, that the claimant's actual reliance on a false
> representation must be reasonable or justifiable. Many Michigan cases
> stated the elements of fraud in a way that included actual reliance, but
> did not expressly require that the actual reliance be reasonable or
> justifiable. In an often-cited case from 1976, for example, the Michigan
> Supreme Court listed the elements of fraud this way:
>
> > The elements constituting actionable fraud or
> > misrepresentation are well-settled in this jurisdiction. In
> > *Candler v. Heigho,* 208 Mich. 115, 121, 175 N.W. 141,
> > 143 (1919), we set forth those elements:
> >
> > "The general rule is that to constitute actionable fraud it
> > must appear: (1) That defendant made a material
> > representation; (2) that it was false; (3) that when he
> > made it he knew that it was false, or made it recklessly,
> > without any knowledge of its truth, and as a positive
> > assertion; (4) that he made it with the intention that it
> > should be acted upon by plaintiff; (5) that plaintiff acted
> > in reliance upon it; and (6) that he thereby suffered
> > injury. Each of these facts must be proved with a
> > reasonable degree of certainty, and all of them must be
> > found to exist; the absence of any one of them is fatal to
> > a recovery."
>
> *Hi–Way Motor Co. v. Int'l Harvester Co.,* 398 Mich. 330, 247 N.W.2d
> 813, 815–16 (1976). As late as January 2008, one federal district court
> decision described the uncertainty on this point of Michigan law this
> way:
>
> > **Whether the reliance must be reasonable is an open
> > question under Michigan law.** *Compare Novak v.
> > Nationwide Mut. Ins. Co.,* 235 Mich.App. 675, 690, 599
> > N.W.2d 546, 554 (1999) (reliance must be reasonable);
> > *Nieves v. Bell Industries, Inc.,* 204 Mich.App. 459, 464,
> > 517 N.W.2d 235, 238 (1994); *State–William
> > Partnership v. Gale,* 169 Mich.App. 170, 179, 425

38

now clear under Michigan law that all types of fraud claims require the plaintiff to establish the

> N.W.2d 756, 761 (1988) *with Phinney v. Perlmutter,*
> 222 Mich.App. 513, 534, 564 N.W.2d 532, 547 (1997)
> (reliance need not be reasonable). **The Supreme Court**
> **of Michigan has not conclusively decided this point.**
> When discussing the elements of fraud, the Supreme
> Court of Michigan required simply "that plaintiff acted
> in reliance" upon the fraudulent statement, without any
> discussion of reasonableness. *See Kassab v. Michigan*
> *Basic Property Ins. Ass'n,* 441 Mich. 433, 442, 491
> N.W.2d 545, 548 (1992), *overruled on other grounds,*
> *Haynes v. Neshewat,* 477 Mich. 29, 39, 729 N.W.2d
> 488, 494–95 (2007); *Hi–Way Motor Co. v. International*
> *Harvester Co.,* 398 Mich. 330, 336, 247 N.W.2d 813,
> 816 (1976); *Candler v. Heigho,* 208 Mich. 115, 121, 175
> N.W. 141, 143 (1919). In another case, the Supreme
> Court wrote:
>
>> To defeat an otherwise righteous cause
>> for fraud, by means of allegation that
>> the plaintiff had timely knowledge of
>> the fact he says was falsely represented,
>> proof of negligence on his part will not
>> suffice. The representation and its
>> materiality proven, it must be shown
>> that the plaintiff's knowledge was so
>> informatively complete as to render the
>> allegation of reliance quite as false as
>> the representation itself.
>
> *Sautter v. Ney,* 365 Mich. 360, 363–64, 112 N.W.2d
> 509, 511 (1961). However, there can not be reliance if
> the plaintiff had knowledge of the actual state of things.
> *Montgomery Ward & Co. v. Williams,* 330 Mich. 275,
> 280, 47 N.W.2d 607, 609–10 (1951). **Although it is an**
> **arguably unsettled point of Michigan law, the**
> **federal courts have assumed that the Michigan**
> **Supreme Court will require reasonableness of**
> **reliance.** *Aron Alan, LLC v. Tanfran, Inc.,* 2007 WL
> 1837843, *3 (6th Cir. Jun. 25, 2007); *Diamond*
> *Computer Systems, Inc. v. SBC Communications, Inc.,*
> 424 F.Supp.2d 970, 984 (E.D.Mich.2006).

*Inland Waters Pollution Control, Inc. v. Jigawon, Inc.,* No. 05–74785,
2008 WL 205209, at *14–15 (E.D.Mich. Jan. 22, 2008) (emphasis
added).

reasonableness of reliance. *See Pixley* I, 456 B.R. at 782; *Mercantile Bank of Michigan v.*

*CLMIA, LLC*, No. 09-001639-CZ, 2015 WL 630259, at *5 (Mich. Ct. App. February 12, 2015);

*Aron Alan, LLC v. Tanfran, Inc.*, 240 F. App'x 678, 682 (6th Cir. 2007); *Abbo v. Wireless Toyz*

*Franchise, L.L.C.*, No. 304185, 2014 WL 1978185, at *11 (Mich. Ct. App. May 13, 2014); *Niell*

*v. Schmoke*, No. 302389, 2012 WL 6604727, at *7 (Mich. Ct. App. Dec. 18, 2012); *Zaremba*

*Equip., Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151, 165 (Mich. Ct. App. 2008).

As this Court explained in *Pixley I*, proving "reasonable reliance" also proves the less

demanding element of "justifiable reliance." *Pixley I*, 456 B.R. at 782.

Therefore, establishing the elements of a fraudulent misrepresentation claim and a silent

fraud claim under Michigan law also establishes all the elements of nondischargeability under

§ 523(a)(2)(A).

The reasonableness of reliance was put at issue in the pleadings in the State Court

Lawsuit,[55] but this element *also* must have been submitted to the jury and determined by the jury,

in order to satisfy the "actually litigated" requirement of collateral estoppel. *See Pixley I*, 456

---

[55] In their Counterclaim in the State Court Lawsuit, Lencher and the Lenchner Entities alleged,
in relevant part, regarding their fraud claim:

> 52. The Lenchner [E]ntities were not aware that these representations
> and omission were false and misleading, and they actually and
> **reasonably relied** upon the misrepresentations and fraudulent omissions
> made to them by Sheldon Korn.

And Lencher and the Lenchner Entities alleged, in relevant part, regarding their silent fraud claim:

> 60. As a direct and proximate result of such **reasonable reliance**, the
> Lenchner [E]ntities have been and will continue to be damaged because
> of the Korns' deceptive and wrongful conduct.

(*See* Ex. B to Mot. (Docket # 27) ("Counterclaim" in State Court Lawsuit) at pdf. pp. 83-84 (emphasis
added)).

B.R. at 778. *It was not.* The state court's instructions to the jury show what elements were submitted to the jury for determination. There is no jury instruction stating that in order to find in favor of Lenchner and the Lenchner Entities on any of their fraud claims, the jury must determine that Lenchner and the Lencher Entities *reasonably* relied on any misrepresentation or failure to disclose by Sheldon and/or the other Korns. Reasonableness of reliance is not listed as an element of any fraud claim in the jury instructions. And reasonableness of reliance is not mentioned in either the jury instruction regarding the meaning of "reliance" or in the instruction regarding the meaning of a "material" fact.[56]

With regard to the fraud claims, the jury was instructed to determine only whether there was *actual* reliance — that is, if Lencher and the Lenchner Entities "did rely" (in the case of fraud and misrepresentation)[57] and if Lenchner and the Lenchner Entities "relied" (in the case of silent fraud).[58] The jury instruction regarding "reliance" likewise described only *actual* reliance, and contained no instruction that the actual reliance had to be reasonable (or justifiable).[59] Because the issue of whether Lenchner and the Lenchner Entities *reasonably* relied on any false representation was not submitted to the jury in the State Court Lawsuit, that issue was not

---

[56] Therefore, even assuming, without deciding, that reasonable reliance is subsumed in the reliance element or the materiality element of a fraud claim under Michigan law, as Lenchner and the Lenchner Entities argue, *see supra* note 48, this certainly would not be obvious to a jury, and the jury was not instructed that this was the case. The issue of reasonable reliance simply was not submitted to the jury.

[57] Trial Tr. in State Court Lawsuit (dated May 26, 2006) at 78 lns. 8-9. A copy of the state court trial transcript dated May 26, 2006, is attached to the Motion (Docket # 27) at Exhibit G and to Sheldon's objection to the Motion (Docket # 37) at Exhibit 1.

[58] *Id.* at 80 lns. 15-16.

[59] *Id.* at 80 lns. 9-14; *see also supra* note 12 and accompanying text.

41

"actually litigated" in the State Court Lawsuit.[60] It follows that the "actually litigated"

requirement of collateral estoppel is not satisfied with regard to the "justifiable reliance" element

of the Plaintiffs' § 523(a)(2)(A) claims. This prevents the Court from granting summary

judgment for Plaintiffs' on their § 523(a)(2)(A) claims (Counts IV, V, and VI). It is not necessary

to discuss Sheldon's other arguments opposing summary judgment on these claims.

**F. Lenchner and the Lenchner Entities' § 523(a)(4) claim**

**1. Elements under § 523(a)(4)**

Section 523(a)(4) states that "[a] discharge under section 727 . . . of this title does not

discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a

fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4). "This section essentially

contains two different exceptions—one for fraud or defalcation while acting in a fiduciary

capacity and another for embezzlement or larceny while acting in any capacity." *Kriescher v.*

*Gibson* (*In re Gibson*), 521 B.R. 645, 655 (Bankr. W.D. Wis. 2014)(citing *Bullock v.*

*BankChampaign, N.A.*, 133 S. Ct. 1754, 1760 (2013)). The term "fiduciary capacity" in

§ 523(a)(4) has a special, narrow meaning:

> A debt is non-dischargeable as the result of defalcation when a
> preponderance of the evidence establishes: (1) a pre-existing
> fiduciary relationship, (2) a breach of that relationship, and (3)
> resulting loss. *Bd. of Trustees v. Bucci* (*In re Bucci*), 493 F.3d 635,
> 642 (6th Cir.2007). **In *Davis* [*v. Aetna Acceptance Co.*, 293 U.S.**
> **328, 331(1934)], the Supreme Court instructed that the term**

---

[60] In its opinion, the Michigan Court of Appeals stated that "the jury could reasonably have
concluded that Lenchner reasonably relied on the false impression created by the Korns." (Jan. 29, 2008
Ct. of Appeals Op. (attached to the Motion (Docket # 27) at Exhibit E) at 6.) But the Court of Appeals
did not state that the jury had actually made a determination that Lenchner *reasonably* relied on the false
impression created by the Korns. The jury clearly did not decide this, given that the reasonableness-of-
reliance element is clearly missing from the jury instructions.

42

> "fiduciary capacity" is narrower here than it is in some other
> contexts: section 523(a)(4) covers only "express" or "technical
> trusts" and not trusts arising out of "the very act of
> wrongdoing." 293 U.S. at 333, 55 S.Ct. 151. These "constructive
> trusts," which arise *ex maleficio* (at the time the wrong is done),
> do not satisfy the "fiduciary capacity" requirement because the
> debtor was not "a trustee before the wrong." *Id.* Establishing
> an "express" trust is straightforward. The creditor must
> demonstrate: "(1) an intent to create a trust; (2) a trustee; (3) a
> trust res; and (4) a definite beneficiary."

*Patel v. Shamrock Floorcovering Servs., Inc.* (*In re Patel*), 565 F.3d 963, 968 (6th Cir. 2009)

(emphasis added) (citation omitted); *see also Commonwealth Land Title Co. v. Blaszak* (*In re*

*Blaszak*), 397 F.3d 386, 391 (6th Cir. 2005) (citation omitted) ("[T]he defalcation provision of

§ 523(a)(4) is limited to only those situations involving an express or technical trust relationship

arising from placement of a specific res in the hands of the debtor.").

"In section 523(a)(4), the term 'while acting in a fiduciary capacity' does not qualify the

words 'embezzlement' or 'larceny.' Therefore, any debt resulting from embezzlement or larceny

falls within the exception of [§ 523(a)(4)]." 4 *Collier on Bankruptcy* ¶ 523.10[2], at 523-76 (Alan

N. Resnick & Henry J. Sommer eds., 16th ed. 2016) (citations omitted); *see also Powers v.*

*Powers* (*In re Powers*), 385 B.R. 173, 178 (Bankr. S.D. Ohio 2008).

> Federal law defines "embezzlement" under section 523(a)(4) as "the
> fraudulent appropriation of property by a person to whom such
> property has been entrusted or into whose hands it has lawfully
> come." A creditor proves embezzlement by showing that he
> entrusted his property to the debtor, the debtor appropriated the
> property for a use other than that for which it was entrusted, and the
> circumstances indicate fraud.

*Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1172-73 (6th Cir. 1996). "[E]mbezzlement, for

purposes of 11 U.S.C. § 523 . . . requires fraud in fact, involving moral turpitude or intentional

43

wrong, rather than implied or constructive fraud." *Gibson*, 521 B.R. at 655 (internal quotation

marks omitted)(quoting *Bank Calumet v. Whiters* (*In re Whiters*), 337 B.R. 326, 332 (Bankr. N.D.

Ind. 2006) (citing *Driggs v. Black* (*In re Black*), 787 F.2d 503, 507 (10th Cir.1986))).

**2.    Lenchner's and the Lenchner Entities' collateral estoppel argument regarding their
§ 523(a)(4) claim**

In their summary judgment brief, Lenchner and the Lenchner Entities argue that the jury

verdict for breach of fiduciary duty and the jury verdicts for fraud in the State Court Lawsuit

collaterally estop Sheldon from arguing that the Judgment debt based on these verdicts is

nondischargeable under § 523(a)(4), as debts for "fraud . . . while acting in a fiduciary capacity"

and as debts for embezzlement.[61]  But in oral argument, Lenchner and the Lenchner Entities

narrowed their summary judgment argument regarding § 523(a)(4), to argue only that (1) the

$250,000 jury verdict and judgment component for breach of fiduciary duty against Sheldon and

Gale Korn is nondischargeable under § 523(a)(4); and (2) this is based only on the "fraud . . .

while acting in a fiduciary capacity" provision in § 523(a)(4).[62]  So the Court will only discuss

those § 523(a)(4) issues.[63]

Lenchner and the Lenchner Entities argue that the issue of whether they had a fiduciary

relationship with Sheldon was submitted to the jury, and the jury determined the parties had a

fiduciary relationship, because the jury returned a verdict against Sheldon for breach of fiduciary

---

[61]  Pls.' Br. in Supp. of Mot. (Docket # 27) at 18.

[62]  Tr. of Summary Judgment Hearing (Docket # 75) at 42-44.

[63]  The Court notes, as Sheldon correctly argues, that Lenchner's and the Lenchner Entities'
complaint in this adversary proceeding does not allege "embezzlement" under § 523(a)(4).    Rather, the
§ 523(a)(4) claim in the adversary complaint (Count VII) alleges only "fraud or defalcation while acting
in a fiduciary capacity."  *See* Compl. (Docket # 1) at ¶ 57.

duty. And according to Lenchner and the Lenchner Entities, the verdict for breach of fiduciary duty together with the fraud verdicts establish "fraud . . . while acting in a fiduciary capacity" under § 523(a)(4).[64]

Sheldon argues that the jury verdicts for breach of fiduciary duty and fraud in the State Court Lawsuit do not preclude him from contesting that the Judgment debt is nondischargeable under § 523(a)(4) as a debt "for fraud . . . while acting in a fiduciary duty." Sheldon argues that "[Lenchner and the Lenchner Entities] do not allege that any express or technical trust had been established and that [Sheldon] was a fiduciary of any such trust" and "the jury instructions did not require the jury to find that an express or technical trust had been established."[65] Sheldon argues that "[§] 523(a)(4) applie(s) to trustees who misappropriate funds held in trust, and "not to those who fail to meet an obligation under a common law fiduciary relationship."[66]

**3.    The Court concludes that Sheldon is not collaterally estopped from contesting the nondischargeability of the debt under § 523(a)(4).**

The Court concludes that the jury verdicts for breach of fiduciary duty and fraud in the State Court Lawsuit do not collaterally estop Sheldon from contesting that the $250,000 breach-of-fiduciary-duty debt in this adversary proceeding is nondischargeable under § 523(a)(4). This is so for at least two reasons. First, it is impossible to tell if any of this $250,000 verdict was for "fraud." The jury instructions regarding the breach of fiduciary duty claim did not require any finding of fraud, which is necessary for "fraud . . . while acting in a fiduciary capacity" under

---

[64]    *Id.*

[65]    Def.'s Br. in Opp'n to Pls.' Mot. for Partial Summ. J. (Docket # 37) at 16.

[66]    *Id.* at 15 (citation omitted).

§ 523(a)(4), so this issue was not "actually litigated."

Second, the jury instructions did not require the jury to consider or determine whether Sheldon was acting in a "fiduciary capacity," as that term is narrowly defined under § 523(a)(4). The jury was not instructed to consider or determine whether Sheldon was a trustee under a pre-existing "express or technical trust," as required by the Sixth Circuit case law quoted above. So this element of § 523(a)(4) was not "actually litigated" either. Rather, the jury instructions, which are quoted in full in Part I.A.2.a.iv of this opinion, instructed the jury that it could find a "breach" of "fiduciary duty," among other ways, merely by finding that Sheldon or Gale Korn either "failed to fulfill their obligations or duties to act with the utmost good faith and integrity in their dealings with one another in partnership affairs," or "failed to fulfill their obligations or duty to disclose all known information that is significant and material to the affairs or property of the partnership."[67]

For these reasons, the Court cannot grant summary judgment for Plaintiffs on their § 523(a)(4) claim (Count VII).

## G. Lenchner's and the Lenchner Entities' § 523(a)(6) claim

## 1. Elements under § 523(a)(6)

Section 523(a)(6) states that "[a] discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" 11 U.S.C. § 523(a)(6).

> In order to establish nondischargeability under § 523(a)(6), a creditor must show an injury to person or property by the debtor that is both "willful" and "malicious." "[T]o find a 'willful' injury under § 523(a)(6), [the court] must determine either that (I) the actor desired to cause the consequences of the act or (ii) the actor

---

[67] Trial Tr. in State Court Lawsuit (Docket # 27, Ex. G; Docket # 37, Ex. 1) at 88-89.

46

believed that the given consequences of his act were substantially
certain to result from the act." *Monsanto Co. v. Trantham* (*In re
Trantham* ), 304 B.R. 298, 307 (6th Cir. BAP 2004) (citing
*Markowitz v. Campbell* (*In re Markowitz* ), 190 F.3d 455, 464 (6th
Cir.1999)). "Under § 523(a)(6), '[m]alicious' means in conscious
disregard of one's duties or without just cause or excuse; it does not
require ill-will or specific intent.'" *Id.* at 308 (*quoting Wheeler v.
Laudani,* 783 F.2d 610, 615 (6th Cir.1986)).

*Pixley I*, 456 B.R. at 785.

## 2.   Lenchners' and the Lenchner Entities' collateral estoppel argument regarding their § 523(a)(6) claim

Lenchner and the Lenchner Entities argue that "the totality of the Judgment, now in excess
of $2 million, is nondischargeable pursuant to 11 U.S.C. § 523(a)(6)" because "[Sheldon]
certainly desired to cause the consequences of his acts" and made repeated false representations
"maliciously and in conscious disregard of [his] duties to [Lenchner and the Lenchner Entities]."[68]

Sheldon argues that the jury did not determine that he desired to cause injury to Lenchner
and the Lenchner Entities or that he "believed than [any] injury was substantially certain to
result."[69]   Therefore, according to Sheldon "there was no state court determination of the
[§523(a)(6)] element of 'willfulness.'"[70]   In addition, Sheldon relies on this Court's 2009 bench
opinion in the *Lenchner v. [Ashley and Shauna] Korn* adversary proceedings, in which the Court
determined that "the plaintiffs [had] not met their burden under Rule 56 of demonstrating that . . .
all of the elements required to establish non-dischargeability under Section 523(a)(6) were
actually litigated and necessarily determined in the State Court [Lawsuit] and reflected in the final

---

[68]   Pls.' Br. in Supp. of Mot. (Docket # 27) at 19.

[69]   Br. in Opp'n to Pls.' Mot. for Partial Summ. J. (Docket # 37) at 18.

[70]   *Id.*

47

[J]udgment there."[71] Sheldon argues that Lenchner and the Lencher Entities have stated no reason why the Court's ruling on the Motion in this case should be different from the Court's summary judgment ruling in the *Lenchner v. [Ashley and Shauna] Korn* adversary proceedings.[72] Sheldon also argues that "the 'and/or' jury verdict forms, do not 'clearly, definitely and unequivocally' reflect a finding that [Sheldon] personally, committed **any** wrongs."[73]

### 3. The Court concludes that Sheldon is not collaterally estopped from contesting that any of the Judgment debt is nondischargeable under § 523(a)(6).

The Court concludes that collateral estoppel does not preclude Sheldon from contesting that any of the Judgment debt is nondischargeable under § 523(a)(6). In explaining why this is so, the Court will address three main issues.

First, the Court must reject Sheldon's argument based on the Court's 2009 bench opinion in the *Lenchner v. [Ashley and Shauna] Korn* adversary proceedings. In its bench opinion in the *Lenchner v. [Ashley and Shauna] Korn* adversary proceedings, the Court denied Lenchner's and the Lenchner Entities' motion for summary judgment based on § 523(a)(6). That ruling was not a final order or judgment, and Sheldon was not a party in those earlier adversary proceedings. The Court denied summary judgment regarding § 523(a)(6), for two stated reasons. The first reason was because the § 523(a)(6) theory had not been pled in the complaint.[74] The second reason was that "the plaintiffs [had] not met their burden under Rule 56 of demonstrating that . . . all of the

---

[71] *Id*. at 18-19 (citing Tr. of Op. in *Lenchner v. Ashley Korn* Adv. Pro. No. 08-5001 (Docket # 29 in Adv. Pro. No. 08-5001)(Ex. 4 of Docket # 37)) at 22 lns. 4-9 (emphasis in original).

[72] *Id.*

[73] Br. in Opp'n to Pls.' Mot. for Partial Summ. J. (Docket # 37) at 19 (emphasis in original).

[74] Tr. of Op. in *Lenchner v. Ashley Korn* Adv. Pro. No. 08-5001(Docket # 29 in Adv. Pro. No. 08-5001)(Ex. 4 of Docket # 37) at 21 lns. 22-25.

48

elements required to establish non-dischargeability under Section 523(a)(6) were actually litigated and necessarily determined in the State Court [Lawsuit] and reflected in the final [J]udgment there."[75] In making this ruling, the Court indicated that it was possible that Lenchner and the Lenchner Entities could eventually prevail on their § 523(a)(6) theory. The Court stated:

> That's not to say that further briefing and discussion might not elaborate and provide further basis for figuring out how that collateral estoppel might apply with respect to [§] 523(a)(6), but on the present briefing and arguments and record I simply don't find the plaintiffs have demonstrated any basis for granting summary judgment in their favor on that theory.[76]

When the Court issued its 2009 bench opinion, the record from the State Court Lawsuit that was before this Court consisted only of the Third Amended Complaint; the Counterclaims; and the jury verdict forms in the State Court Lawsuit; the Judgment; and the Michigan Court of Appeals decision. Importantly, the record did not include the state court jury instructions.

In the present adversary proceeding, Lenchner and the Lenchner Entities have actually pled nondischargeability under § 523(a)(6), and the record does include the jury instructions, as well as further briefing and arguments. Therefore, the Court must now decide the § 523(a)(6) issues in light of the more developed pleadings, record, briefing, and oral arguments in this case.

A second issue the Court considers is whether the same debt can be nondischargeable under both § 523(a)(2)(A) and § 523(a)(6). At least until the Supreme Court's recent decision in the *Husky* case, discussed in Part III.E.1.c of this opinion, there has been some disagreement in the case law on this issue.

---

[75] *Id.* at 22 lns. 2-9.

[76] *Id.* at 22 lns. 10-16.

On the one hand, some cases hold that the same debt can be nondischargeable under both sections. *See, e.g.*, *Purser v. Scarbrough* (*In re Scarbrough*), 516 B.R. 897, 914 (Bankr. W.D. Tex. 2014) (citations omitted)("Although § 523(a)(2)(A) is the usual vehicle for seeking nondischargeability of a debt based on fraud, it is possible to assert a claim for willful and malicious fraud under § 523(a)(6)."); *Schubert Osterrieder & Nickelson PLLC v. Bain* (*In re Bain*), 436 B.R. 918, 924 (Bankr. S.D. Texas 2010) (holding that "although Plaintiffs' fraud claim [did] not state a claim under § 523(a)(2)(A), it [did] state a claim under § 523(a)(6);" that "[a]llowing Plaintiffs' state-law fraud claim to be asserted under § 523(a)(6) would not render § 523(a)(2)(A) superfluous"; and that "[c]onsidering the claim under § 523(a)(6) instead would not circumvent any special requirements of § 523(a)(2)(A)"); 4 *Collier on Bankruptcy* ¶ 523.12[1], at 523-91 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016) ("Conduct which may give rise to a nondischargeable debt under section 523(a)(6) may also be nondischargeable under other subsections of section 523(a). For example, debts procured by fraud may be nondischargeable under section 523(a)(6) as arising from conduct causing willful and malicious injury to an entity or property of an entity.").

On the other hand, some cases hold, in effect, that the two sections are mutually exclusive. *See, e.g.*, *Berkson v. Gulevsky* (*In re Gulevsky*) 362 F.3d 961, 963-64 (7th Cir. 2004) (citations omitted) (stating that "[f]raud . . . is an intentional tort and § 523(a)(6) makes many intentional torts nondischargeable . . . "[b]ut § 523(a)(6) cannot make all debts procured by fraud nondischargeable, because that would make superfluous § 523(a)(2), § 523(a)(4), and § 523(a)(11), all of which make different sorts of debts procured by fraud nondischargeable"); *Wachovia Sec., LLC v. Jahelka* (*In re Jahelka*), 442 B.R. 663, 671-72 & n.4 (Bankr. N.D. Ill.

50

2010) (citations omitted) (holding that although "[t]he general language of section 523(a)(6) would arguably encompass debts for fraud . . . [s]ections 523(a)(2) and (a)(6) are mutually exclusive" and that "[d]ebts resulting from fraud are therefore nondischargeable under section 523(a)(2) or not at all[,]" but acknowledging that its position was "decidedly the minority" position).

In the *Husky* case, the Supreme Court appears to have resolved this disagreement in the case law, by holding that the same debt can be nondischargeable under both the "actual fraud" provision of § 523(a)(2)(A) on the one hand, and § 523(a)(4) and/or § 523(a)(6) on the other hand. The Court recognized that there is "overlap" among these § 523(a) sections, but noted that this is "unremarkable" and "appears inevitable." *Husky*, 136 S. Ct. at 1588. The Court also stated that there are "redundancies" among these § 523(a) sections, but the Court described them as "narrow" and "unavoidable." *Id.* The Supreme Court explained:

> Ritz makes the unremarkable point that the traditional definition of "actual fraud" will cover some of the same conduct as those exceptions: for example, a trustee who fraudulently conveys away his trust's assets. But Ritz' interpretation does not avoid duplication, nor does our interpretation fail to preserve a meaningful difference between § 523(a)(2)(A) and §§ 523(a)(4), (6). Just as a fiduciary who engages in a fraudulent conveyance may find his debt exempted from discharge under either § 523(a)(2)(A) or § 523(a)(4), so too would a fiduciary who engages in one of the fraudulent misrepresentations that form the core of Ritz' preferred interpretation of § 523(a)(2)(A). The same is true for § 523(a)(6). The debtors who commit fraudulent conveyances *and* the debtors who make false representations under § 523(a)(2)(A) could likewise also inflict "willful and malicious injury" under § 523(a)(6). There is, in short, overlap, but that overlap appears inevitable. And, of course, our interpretation of "actual fraud" in § 523(a)(2)(A) also preserves meaningful distinctions between that provision and § 523(a)(4), (a)(6). Section 523(a)(4), for instance, covers only debts for fraud while acting as a fiduciary, whereas

51

§ 523(a)(2)(A) has no similar limitation.  Nothing in our interpretation alters that distinction. And § 523(a)(6) covers debts "for willful and malicious injury," whether or not that injury is the result of fraud, *see Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (discussing injuries resulting from "intentional torts"), whereas § 523(a)(2)(A) covers only fraudulent acts. Nothing in our interpretation alters that distinction either. Thus, given the clear differences between these provisions, we see no reason to craft an artificial definition of "actual fraud" merely to avoid narrow redundancies in § 523 that appear unavoidable.

*Id.*

The Supreme Court's 2016 decision in the *Husky* case is not the first time the Supreme Court has indicated that the same debt may be nondischargeable under more than one subsection of § 523(a).  The Supreme Court clearly indicated this in the 1986 case of *Kelly v. Robinson*, as this Court noted in a prior opinion.  *See Michigan Unemployment Ins. Agency v. Kozlowski* (*In re Kozlowski*), 547 B.R. 222, 234 (Bankr. E.D. Mich. 2016), *aff'd*, No. 16–11323, 2016 WL 6405806 (E.D. Mich. October 28, 2016), (footnotes omitted) ("Th[e] dictum in *Kelly v. Robinson*, [479 U.S. 36, 42 & n.n.3-4 (1986), "that . . . not only was the criminal fraud restitution debt in that case nondischargeable under § 523(a)(7)(as the Court held), but also such debt could have been found nondischargeable under 11 U.S.C. § 523 (a)(4), as a debt for 'larceny,' if a nondischargeability claim under § 523(a)(4) had been timely made (which it was not)"] clearly negates any rule that the same debt can never be covered by more than one subsection of § 523(a).").

The third issue the Court will discuss is what the Court sees as a fatal flaw in Lenchner's and the Lenchner Entities' § 523(a)(6) collateral estoppel argument.  Based on the state court jury instructions, the Court agrees with Sheldon that the § 523(a)(6) element of "willfulness" was not

52

"actually litigated" in the state court, with respect to any of the counterclaims on which the jury rendered a verdict, and therefore with respect to any part of the state court Judgment entered against Sheldon and the other Korns.

As discussed in Part III.B of this opinion, in order for a Michigan state court judgment to have preclusive effect in this Court on an issue, under the doctrine of collateral estoppel, the issue must have been both "actually litigated" and "necessarily determined" in the state court action. "Under Michigan law, an issue is 'actually litigated' if it is 'put into issue by the pleadings, submitted to the trier of fact for determination, and is thereafter determined.'" *Pixley I*, 456 B.R. at 778 (citations omitted). In this case, the trier of fact was the jury, and the jury instructions are what show whether or not any given issue was "submitted to" the jury. And the combination of the jury instructions and the verdict forms shows what was "thereafter determined" by the jury.

As noted above, § 523(a)(6)'s "willful and malicious injury" provision requires that the injury be both "willful" and "malicious." And "to find a 'willful' injury under § 523(a)(6), [the court] must determine either that (I) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Pixley I*, 456 B.R. at 785 (citations omitted).

In considering whether the § 523(a)(6) issue of "willfulness" was submitted to and determined by the jury in the State Court Lawsuit, it is important to keep in mind the distinction between a deliberate or intentional injury on the one hand, and a deliberate or intentional act that leads to injury on the other hand. As the Supreme Court held in *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62 (1998),

> The word "willful" in [§ 523](a)(6) modifies the word "injury,"

> indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. . . . Moreover, . . . the [§ 523](a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself."

(italics in original) (citations omitted). Thus, to establish "willfulness" under § 523(a)(6) it is not enough merely to show that a debtor intentionally committed an act, and the act caused injury or damage. The debtor must have intended his act to cause injury or damage, or at least must have "believed that the given consequences of his act were substantially certain to result from the act." *See Pixley I*, 456 B.R. at 785, and cases cited therein.

The issue of such "willfulness" was not submitted to the jury, and therefore was not "determined" by the jury in the State Court Lawsuit, with respect to any claim or component of the Judgment against Sheldon and the other Korns. In this context, "willfulness" means that Sheldon either (1) intended ("desired") to cause the injury or injuries to Lenchner and the Lenchner Entities that made up their damages; or (2) believed that the injury or injuries "were substantially certain to result from" his act(s).

The jury was not instructed that it needed to determine this with respect to any of the counterclaims, or even with respect to exemplary damages. This conclusion follows from a careful examination of the jury instructions.

The jury verdicts on the counterclaims at issue, and the resulting component of the Judgment against Sheldon, were these:

- $250,000      Fraud and Misrepresentation
- $1,070,000      Silent Fraud
- $175,000      Unjust Enrichment

54

- • $250,000      Breach of Fiduciary Duty
- • $250,000      Exemplary Damages
  **$1,995,000**   Total Judgment amount against Sheldon

The relevant jury instructions and jury verdict forms are all quoted in full, in Part I.A.2.a and I.A.2.b of this opinion. The verdict forms themselves contain no instructions to the jury. The Court will now discuss the jury instructions regarding each of the above components of the Judgment. (For purposes of the following discussion, the Court will sometimes refer to Lenchner and the Lenchner Entities collectively as the "Plaintiffs." They are the Plaintiffs in this adversary proceeding; they were the defendants and counter-plaintiffs in the State Court Lawsuit.)

**a. Fraud and Misrepresentation**

In substance, the jury instruction for this claim permitted the jury to find against Sheldon and the other Korns if it determined that (1) they made a false representation of a material fact; (2) knew the representation was false when they made it **"or made [it] recklessly, that is, without knowing whether it was true**;" (3) they **intended Plaintiffs to rely on the representation**; (4) Plaintiffs did so rely; and (5) Plaintiffs were damaged as a result of such reliance.[77]

Given this instruction, the jury could have found against Sheldon and the other Korns without finding that Sheldon or any of the other Korns either (a) intended the damage that resulted from Plaintiffs' reliance on the false representation(s), or (b) believed that such damage to the Plaintiffs was "substantially certain to result from" their act(s) of making the false representation(s). The instruction merely required that Sheldon and the other Korns intended that Plaintiffs rely on the representation(s), **not** that Sheldon and the other Korns intended that the

---

[77]  Trial Tr. in State Court Lawsuit (dated May 26, 2006) at 77 ln. 21 through 78 ln. 11 (emphasis added).

Plaintiffs be damaged by such reliance. Moreover, the instruction did not even require the jury to find that Sheldon and the other Korns made any false representation knowing it was false — it was sufficient if they merely made the representation without knowing if it was true or not (*i.e.*, "recklessly").

For these reasons, the Court cannot find that the § 523(a)(6) willfulness element was either submitted to the jury or that it was determined by the jury, with respect to the $250,000 "Fraud and Misrepresentation" component of the jury verdict and Judgment. Therefore, this issue was not "actually litigated," and collateral estoppel does not apply.

The Court's foregoing close scrutiny of the language of the jury instructions is not mere nit-picking by the Court; rather, it is necessary. In order to find that collateral estoppel precludes Sheldon from contesting § 523(a)(6) "willfulness," this Court must find "clearly, definitely, and unequivocally" that this issue was "actually litigated" — *i.e.*, that it was submitted to the jury by the jury instructions and determined by the jury. *See Chamberlain v. Messer* (*In re Messer*), 500 B.R. 875, 882 (Bankr. E.D. Mich. 2013) ("Under Michigan law, '[c]ollateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally.' *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 631 (1990).").

**b. Silent Fraud**

In substance, the jury instruction for this claim permitted the jury to find against Sheldon and the other Korns if it determined that (1) they failed to disclose a material fact; (2) they actually knew of the fact; (3) their failure to disclose the fact caused Plaintiffs to have a false impression, and Sheldon and the other Korns knew it; (4) Sheldon and the other Korns **intended Plaintiffs to rely on such false impression**; (5) Plaintiffs did rely on such false impression; and

56

(6) Plaintiffs were damaged as a result of such reliance.

Given this instruction, the jury could have found against Sheldon and the other Korns without finding that Sheldon or any of the other Korns either (a) intended the damage that resulted from Plaintiffs' reliance on the false impression created by Sheldon and the other Korns, or (b) believed that such damage to the Plaintiffs was "substantially certain to result from" their act(s) of failing to disclose the material fact. The instruction merely required that Sheldon and the other Korns intended that Plaintiff's rely on the false impression created by the non-disclosure of material fact, **not** that the Plaintiffs be damaged by such reliance.

Plaintiffs Lenchner and the Lenchner Entities (who were the counter-plaintiffs in the State Court Lawsuit) take the view that Sheldon *must have* either intended Plaintiffs to suffer the damages they did, or must have known Plaintiffs would suffer such damages. This is because of the view Plaintiffs take of their fraud and silent fraud claims against Sheldon and the other Korns, and for that matter their other claims. Plaintiffs' view is that their claims are mostly about how Sheldon and the other Korns engaged in a scheme with each other to fraudulently induce Lenchner to invest and continue to invest money in the Lenchner Entities, and then continually loot those entities by siphoning money from them for personal use, all the while concealing such looting from Lenchner. And the Court of Appeals opinion that affirmed the state court Judgment echoed this theme, holding that the jury reasonably could have found it to be true. But the Court of Appeals did not hold that this is what the jury *did* find when it rendered its verdicts against Sheldon and the other Korns, or that all of the damages awarded by the jury were based on such a fraudulent looting scheme. And there is nothing at all in the jury instructions about such a looting scheme.

57

This Court cannot base its collateral estoppel ruling on what the jury *could* have found, or *might* have found, when it rendered its verdicts on the counterclaims against Sheldon and the other Korns. Rather, the Court must base its collateral estoppel ruling on what issues and elements were submitted to the jury for determination (*i.e.*, the jury instructions) and what the jury's verdict forms say. That approach is compelled by (1) the collateral estoppel requirement that an issue must have been "actually litigated" (submitted to the trier of fact and determined); and (2) the requirement under Michigan law that a court may apply collateral estoppel to preclude litigation of an issue only when "the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally.'" *See Chamberlain,* 500 B.R. at 882 (quoting *People v. Gates*, 434 Mich. 146, 452 N.W.2d 627, 631 (1990)).

For these reasons, the Court cannot find that the § 523(a)(6) "willfulness" element was either submitted to the jury or that it was determined by the jury, with respect to the $1,070,000 "Silent Fraud" component of the jury verdict and Judgment. Therefore, this issue was not "actually litigated," and collateral estoppel does not apply.

**c. Unjust enrichment**

In substance, the jury instruction for this claim permitted the jury to find against Sheldon and the other Korns if it determined that (1) Sheldon and other Korns received "a benefit" from the Plaintiffs, which was not the subject of an "actual express contract" between the parties; and (2) retention of that benefit by Sheldon and the other Korns would be "an inequity."

Given this instruction, the jury obviously could have found against Sheldon and the other Korns without finding that Sheldon or any of the other Korns either (a) intended to injure or damage Plaintiffs by the receipt and retention of a "benefit" from Plaintiffs; or (b) believed that

58

such injury or damage to the Plaintiffs was "substantially certain to result from" their act(s) of receiving and retaining the "benefit." Such things clearly were not part of this jury instruction.

For these reasons, the Court cannot find that the § 523(a)(6) willfulness element was either submitted to the jury or that it was determined by the jury, with respect to the $175,000 "Unjust Enrichment" component of the jury verdict and Judgment. Therefore, this issue was not "actually litigated," and collateral estoppel does not apply.

**d. Breach of Fiduciary Duty**

In substance, the jury instruction for this claim permitted the jury to find against Sheldon and Gale Korn if it determined that they had, and breached, a "fiduciary relationship" with the Plaintiffs; and that Plaintiffs "were damaged as a result of" the breach. And the instructions told the jury that it could find a "breach" of "fiduciary duty" by Sheldon and Gale Korn if it found *any one* of the following three things: that Sheldon or Gale Korn either "failed to fulfill their obligations or duties to act with the utmost good faith and integrity in their dealings with one another in partnership affairs," or "failed to fulfill their obligations or duty to disclose all known information that is significant and material to the affairs or property of the partnership;" or "failed to fulfill their obligation or duty to account to the partnership for any benefit and hold as trustee for it any profits derived by them without the consent of the plaintiffs or other partners from any transaction connected with the conduct or partnership . . . or from any use by themselves of partnership property."[78]

Thus, the jury instructions required the jury to determine whether Plaintiffs were damaged as a result of any such breach of fiduciary duty, but *not* whether Sheldon or Gale Korn either (a)

---

[78] Trial Tr. in State Court Lawsuit (Docket # 27, Ex. G; Docket # 37, Ex. 1) at 88-89.

intended the damage that resulted to Plaintiffs from their breach of fiduciary duty; or (b) believed that such damage to the Plaintiffs was "substantially certain to result from" their act(s) of breaching their fiduciary duty. Rather, the jury instructions said nothing about what Sheldon and Gale Korn *intended*, or what they *believed*; so the instructions did not instruct the jury to find anything about that subject.

For these reasons, the Court cannot find that the § 523(a)(6) willfulness element was either submitted to the jury or that it was determined by the jury, with respect to the $250,000 "Breach of Fiduciary Duty" component of the jury verdict and Judgment. Therefore, this issue was not "actually litigated," and collateral estoppel does not apply.

**e. Exemplary Damages**

The Court will quote the jury instruction on exemplary damages in full, with appropriate names for the parties inserted for ease of reading:

> In addition to actual damages, the law permits the jury, under certain circumstances, to award the injured party exemplary damages. If you should find, by a preponderance of the evidence, that [Plaintiffs are] entitled to a verdict of actual or compensatory damages and further find that [Sheldon's or the other Korns'] acts which caused actual damages to the [Plaintiffs] were maliciously, willfully, and wantonly done, then you may add to the award of actual damages an amount you agree is proper as exemplary damages.

> An act or failure to act is maliciously done if prompted or accompanied by ill-will, spite or grudge toward the injured party. An act or a failure to act is wantonly done if done in reckless or callous disregard of or indifference to the rights of one or more persons, including the injured party. An act or a failure to act is willfully done if done voluntarily and intentionally and with specific intent to do something the law forbids.[79]

---

[79] *Id*. at 76 ln. 24 through 77 ln. 18.

This jury instruction immediately preceded the instructions regarding the underlying claims (fraud and misrepresentation; silent fraud; promissory estoppel; unjust enrichment; breach of fiduciary duty), and notably, this instruction on exemplary damages was not linked to any one or more of the specific underlying claims, nor did it require the jury to link any award of exemplary damages to any specific underlying claim(s), either in its deliberations or in its verdict forms. It is therefore impossible to determine which of the underlying claims the exemplary damage award was linked to by the jury.

In any event, the jury instructions permitted the jury to award exemplary damages against Sheldon and the other Korns by finding that their "acts which caused actual damages to the [Plaintiffs] were maliciously, willfully, and wantonly done." To find these three elements, the jury had to find that the acts by Sheldon and the other Korns: (1) "were prompted or accompanied by ill-will, spite or grudge toward the [Plaintiffs]" ("maliciously done"); and (2) "done in reckless or callous disregard of or indifference to the rights of [Plaintiffs]" ("wantonly done"); and (3) "done voluntarily and intentionally and with specific intent to do something the law forbids" ("willfully done").

The jury could have found against Sheldon and the other Korns on the first two of these three requirements ("maliciously done" and "wantonly done") without finding that any of their "acts which caused actual damages to the [Plaintiffs]" were done either (a) with the intent to cause the actual damages to Plaintiffs; or (b) with the belief that such damages to the Plaintiffs were "substantially certain to result from" their acts.

The third of these requirements ("willfully done") presents a closer question, but the Court concludes that the jury instructions permitted the jury to find this requirement without finding an

61

intent or belief by Sheldon that satisfies the § 523(a)(6) "willfulness" definition. The jury instruction on this third exemplary damages requirement ("willfully done") required the jury to find that the acts done by Sheldon and the other Korns which caused actual damages to Plantiffs were (1) voluntarily and intentionally done; and (2) done "with specific intent to do something the law forbids." This intent requirement — *i.e.*, intent to "do something the law forbids" — is *not* the same as intent to cause injury or damage. The jury instruction permitted the jury to award exemplary damages against Sheldon and the other Korns without finding that their "acts which caused actual damages to the [Plaintiffs]" were done either (a) with the intent to cause the actual damages to Plaintiffs; or (b) with the belief that such damages to the Plaintiffs were "substantially certain to result from" their acts.

For these reasons, the Court cannot find that the § 523(a)(6) willfulness element was either submitted to the jury or that it was determined by the jury, with respect to the $250,000 "Exemplary Damages" component of the jury verdict and Judgment. Therefore, this issue was not "actually litigated," and collateral estoppel does not apply.

For the foregoing reasons, and consistent with the requirement that "exceptions to discharge are to be strictly construed against the creditor," *Rembert*, 141 F.3d at 281 (citation omitted), the Court cannot find that the § 523(a)(6) "willfulness" requirement was an issue that was "actually litigated" with respect to any component of the jury verdict and resulting Judgment. And the Court certainly cannot find, as it must, that this issue was "clearly, definitely, and unequivocally" an issue that was "actually litigated." As a result, the Court cannot grant summary judgment for Plaintiffs on any aspect of their § 523(a)(6) claim (Count VIII).

**IV. Conclusion**

For the reasons stated in this opinion, the Court will enter an order denying Plaintiffs'

summary judgment motion in its entirety.


**Signed on April 14, 2017**                    **/s/ Thomas J. Tucker_____**
                                                **Thomas J. Tucker**
                                                **United States Bankruptcy Judge**

63